Citation Nr: 1454760 
Decision Date: 12/12/14 Archive Date: 12/17/14

DOCKET NO. 08-07 064 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Atlanta, Georgia


THE ISSUE

Entitlement to an initial rating in excess of 20 percent for a left knee disability, to include dislocated semilunar cartilage and degenerative osteoarthritis.


REPRESENTATION

Appellant represented by: Charles D. Romo, Attorney at Law


ATTORNEY FOR THE BOARD

J. Turner, Associate Counsel


INTRODUCTION

The Veteran served on active duty from October 1985 to March 1990.

This matter comes before the Board of Veterans' Appeals (Board) on appeal of a June 2004 rating decision by the Department of Veterans Affairs (VA) Regional Office (RO) in Atlanta, Georgia, which denied entitlement to service connection. In July 2006, the RO issued a subsequent opinion considering evidence received within the appeal period, awarding a 10 percent evaluation, effective March 9, 2004. In January 2008, the RO issued another opinion considering additional evidence, and awarded a 20 percent evaluation, effective March 9, 2004.


FINDING OF FACT

Throughout the pendency of this claim, the Veteran's left knee condition was manifested by x-ray evidence of arthritis, and flexion limited, at worst, to 20 degrees with painful movement, swelling popping, grinding and clicking, and a medial meniscal tear.


CONCLUSIONS OF LAW

1. The criteria for a rating in excess of 20 percent for a left knee condition due to dislocated semilunar cartilage have not been met. 38 U.S.C.A. § 1155 (West 2002); 38 C.F.R. §§ 3.321, 4.45, 4.68, 4.71a, Diagnostic Code (DC) 5258.

2. The criteria for a separate rating of 10 percent for arthritis with limitation of motion of the left knee have been met. 38 U.S.C.A. § 1155 (West 2002); 38 C.F.R. §§ 3.321, 4.40, 4.45, 4.68, 4.71a, DCs 5003, 5260.


REASONS AND BASES FOR FINDING AND CONCLUSIONS

I. Procedural Duties

VA has met all statutory and regulatory notice and duty to assist provisions as to the Veteran's claim for a higher initial rating for a left knee disability. See 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5106, 5107, 5126 (West 2014); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326 (2014).

A. Duty to Notify

When VA receives a complete or substantially complete application for benefits, it is required to notify the claimant and his representative, if any, of any information and medical or lay evidence that is necessary to substantiate the claim. 38 U.S.C.A. § 5103(a); 38 C.F.R. § 3.159(b). VA must inform the claimant of any information and evidence not of record (1) that is necessary to substantiate the claim; (2) that VA will seek to provide; and (3) that the claimant is expected to provide. Id. 

The initial rating appeal arises from a granted claim of service connection. Compliance with the first notice element requires notice of the five service connection elements in initial ratings cases: (1) veteran status; (2) existence of a disability; (3) a connection between the veteran's service and the disability; (4) degree of disability; and (5) effective date. See Dunlap v. Nicholson, 21 Vet. App. 112 (2006). 

Prior to initial adjudication of the Veteran's claim, an April 2004 letter fully satisfied the duty to notify provisions, including notice of the degree of disability. 38 U.S.C.A. § 5103(a); 38 C.F.R. § 3.159(b)(1). 

B. Duty to Assist

The Board also concludes VA's duty to assist in obtaining records has been satisfied. The Veteran's service treatment records and VA medical records are in the file. Private medical records identified by the Veteran have been obtained, to the extent possible. The Veteran has at no time referenced outstanding records that he wanted VA to obtain or that he felt were relevant to the claim. The Board notes that the Veteran has repeatedly requested that the VA retrieve treatment records from the Albany, Georgia VA Outpatient Center. Although the RO failed to list the Albany VA treatment records as evidence included within the record, the Board notes that these records are indeed associated with the file.

The duty to assist includes, when appropriate, the duty to conduct a thorough and contemporaneous examination of the Veteran. Green v. Derwinski, 1 Vet. App. 121 (1991). In addition, where the evidence of record does not reflect the current state of the Veteran's disability, a VA examination must be conducted. Schafrath v. Derwinski, 1 Vet. App. 589 (1991); 38 C.F.R. § 3.327(a) (2014).

The RO provided the Veteran appropriate VA examinations in November 2006, March 2008, and May 2013. The Veteran has not reported receiving any recent treatment specifically for this condition (other than at VA and the private treatment mentioned above, records of which are in the file), and there are no records suggesting an increase in disability has occurred as compared to the prior VA examination findings. There is no objective evidence indicating that there has been a material change in the severity of the Veteran's service-connected disorder since he was last examined. 38 C.F.R. § 3.327(a). The examination reports provide sufficient evidence to apply the ratings schedule and to determine that the schedular rating is adequate to rate the disability. The duty to assist does not require that a claim be remanded solely because of the passage of time since an otherwise adequate VA examination was conducted. See Palczewski v. Nicholson, 21 Vet. App. 174, 182 (2007) (mere passage of time does not require VA to provide a new medical examination); see also VAOPGCPREC 11-95. The VA examination reports are thorough and supported by VA outpatient treatment records. The examinations in this case are an adequate basis on which to adjudicate the claim.


II. Higher Initial Rating

The Veteran contends that he is entitled to a rating in excess of 20 for his left knee disability. For the reasons that follow, the Board concludes that an increased rating is not warranted.

Disability evaluations are determined by evaluating the extent to which a Veteran's service-connected disability adversely affects his or her ability to function under the ordinary conditions of daily life, including employment, by comparing his or her symptomatology with the criteria set forth in the Schedule for Rating Disabilities. The percentage ratings represent as far as can practicably be determined the average impairment in earning capacity resulting from such diseases and injuries and the residual conditions in civilian occupations. Generally, the degree of disabilities specified are considered adequate to compensate for considerable loss of working time from exacerbation or illness proportionate to the severity of the several grades of disability. 38 U.S.C.A. § 1155 (West 2014); 38 C.F.R. § 4.1 (2014). Separate diagnostic codes identify the various disabilities and the criteria for specific ratings. If two disability evaluations are potentially applicable, the higher evaluation will be assigned to the disability picture that more nearly approximates the criteria required for that rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7 (2014). Any reasonable doubt regarding the degree of disability will be resolved in favor of the Veteran. 38 C.F.R. § 4.3 (2014). However, the evaluation of the same disability under various diagnoses, known as pyramiding, is to be avoided. 38 C.F.R. § 4.14 (2014). 

Disability of the musculoskeletal system is primarily the inability, due to damage or infection in parts of the system, to perform the normal working movements of the body with normal excursion, strength, speed, coordination, and endurance. It is essential that the examination upon which ratings are based adequately portray the anatomical damage, and the functional loss, with respect to all these elements. The functional loss may be due to absence of part, or all, of the necessary bones, joints and muscles, or associated structures, or to deformity, adhesions, defective innervation, or other pathology, or it may be due to pain, supported by adequate pathology and evidenced by the visible behavior of the claimant undertaking the motion. Weakness is as important as limitation of motion, and a part that becomes painful on use must be regarded as seriously disabled. A little used part of the musculoskeletal system may be expected to show evidence of disuse, either through atrophy, the condition of the skin, absence of normal callosity or the like. 38 C.F.R. § 4.40 (2014).

Raters must analyze the evidence of pain, weakened movement, excess fatigability, or incoordination and determine the level of associated functional loss in light of 38 C.F.R. § 4.40, taking into account any part of the musculoskeletal system that becomes painful on use. DeLuca v. Brown, 8 Vet. App. 202 (1995). The provisions regarding pyramiding do not forbid consideration of a higher rating based on greater limitation of motion due to pain on use, including flare-ups. 38 C.F.R. § 4.14 (2014). The guidance provided by the Court in DeLuca must be followed in adjudicating claims where a rating under the diagnostic codes governing limitation of motion should be considered. However, the Board notes that the provisions of 38 C.F.R. § 4.40 (2014) and 38 C.F.R. § 4.45 (2014) should only be considered in conjunction with the diagnostic codes predicated on limitation of motion. Johnson v. Brown, 9 Vet. App. 7 (1996). 

Normal ranges of motion of the knee are to 0 degrees in extension, and to 140 degrees in flexion. 38 C.F.R. § 4.71 , Plate II. 

Diagnostic Code 5003 provides that degenerative arthritis that is established by x-ray findings will be rated on the basis of limitation of motion under the appropriate diagnostic codes for the specific joint or joints involved. 

Diagnostic Code 5260 provides ratings based on limitation of flexion of the leg. Flexion of the leg limited to 30 degrees is rated 20 percent disabling, and flexion of the leg limited to 15 degrees is rated 30 percent disabling. 38 C.F.R. § 4.71a . See VAOPGCPREC 09-04 (separate ratings may be granted based on limitation of flexion (Diagnostic Code 5260) and limitation of extension (Diagnostic Code 5261) of the same knee joint). 

Diagnostic Code 5261 provides ratings based on limitation of extension of the leg. Extension of the leg limited to 15 degrees is rated 20 percent disabling; extension of the leg limited to 20 degrees is rated 30 percent disabling; extension of the leg limited to 30 degrees is rated 40 percent disabling; and extension of the leg limited to 45 degrees is rated 50 percent disabling. 38 C.F.R. § 4.71a. 

VA treatment records dated October 2004 show the Veteran complained of left knee pain. X-ray reports suggested cartilage loss and mild osteophyte formation consistent with mild degenerative osteoarthritis. There was a calcification or ossification in the medial collateral ligament consistent with an old injury. There was no acute fracture at this location, and no focal soft tissue abnormality. 

On examination, there was no evidence of swelling or effusion on the left knee, but there was tenderness over the medial aspect of the joint. There was no deformity of the joint, but there was mild crepitus over the left knee as compared to the right knee. There were no abnormal movements of the left knee joint.

March 2005 private treatment records with Dr. B.C. note a history of lateral knee pain, swelling, popping and clicking. Imaging tests of the left knee showed collateral ligaments intact and normal, with no marrow edema or fracture. There was notation of psteophytic lipping and the joint line from degenerative phenomenon, but without chondromalacia. The quadriceps and patellar tendons were intact. The patella was normally located with mild bilateral patellar subluxation. There was cartilage irregularity in the lateral trochlea, some of which tended through the full-thickness, for approximately 1.4 centimeters. The patellar cartilage was also thinned in the lateral facet and extends to the apex. The retinacular structures were intact. The ACL and PCL were intact, as was the meniscus, however, there was some under-surface fraying in the posterior horn of the medial meniscus, without a discrete tear. The report noted small joint effusion and no popliteal cyst. The report diagnosed patellofemoral chondromalacia reaching grade III or IV and primarily involving the lateral joint with mild lateral patellar subluxation. There was also mild osteoarthritis in the medial and lateral compartment, posterior horn medial meniscal fraying, and possible small parameniscal cysts along the anterior horn of the lateral meniscus, usually associated with an otherwise occult meniscal tear. However, since the examiner did not see other evidence of a meniscal tear, the cysts were thought to be from a small intra-articular ganglia. The report finally notes small joint effusion and venous varicosities in the lateral subcutaneous fat.

On November 2006 VA examination the Veteran complained of pain in the left knee, precipitated by prolonged walking or standing. The Veteran reported self-medicating with over the counter medicine. He stated he had a knee brace but did not wear it because it made his knee feel worse. He denied losing any time from work in the past year, but stated that when he did yard work, he had to take breaks about every 30 minutes and was not able to exercise anymore because of his knees. Flare-ups were characterized as increased pain (6-8 on a scale of 1-10) with swelling and stiffness in the affected knee and occur 3 to 4 times a week after a long day at work. The flare-ups were relieved with rest and application of heat and elevation of the knee, along with analgesics for pain. The Veteran denied any limitations of activities of daily living. Regarding effects on his occupation, the Veteran stated he had to sit and stand for prolonged period of times at work, which caused him pain in his knee. He stated that when he gets home from work, he had increased pain and swelling in the knee from getting up and down all day.

On examination, the Veteran had loss of normal curvature, but with symmetrical patellas. The Veteran had point tenderness on the left medial and lateral patella region. There was no warmth, erythema, edema, effusion or instability. Muscle strength was 5/5 bilaterally. Deep tendon reflexes were 1+ bilaterally. Range of motion testing showed flexion of 0 to 140 degrees, without pain, and extension to zero degrees, without pain. The Veteran had moderate crepitus and grinding to left knee with audible popping during extension. There was no evidence of pain, weakness, incoordination, fatigue, or lack of endurance with repetition. There was no additional loss of function with repetitive motion.

November 2006 VA treatment records reflect x-ray testing, which showed calcification near the medial distal femur, which might be secondary to old trauma and was previously described on examination, though previous films were not available for comparison. Mild degenerative changes were noted with osteophyte and atherosclerosis. There was no definite acute fracture or dislocation noted.

June 2007 VA treatment records show the Veteran had decided to proceed with the left knee medial meniscectomy and abrasion chondroplasty of his patellofemoral joint, as he had rather severe chondromalacia, which was evident on examination. The examination revealed tenderness along the medial aspect of the knee, with positive McMurray's test and negative Lachman's test, no evidence of pivot shift, and an otherwise excellent range of motion.

A July 2007 operative report showed the Veteran underwent an arthroscopic partial medial meniscectomy, abrasion chondroplasty with micro-fracture, lateral femoral condyle, abrasion chondroplasty, patellofemoral joint and patella.

August 2007 private treatment records show the Veteran had a follow-up appointment after his arthroscopy. The Veteran reported doing well, and though he noted some pain, he stated he continued to improve overall. He reported exercising at the gym some and walking on the treadmill and doing some isometric exercises. On examination, he had full extension and approximately 115 to 120 degrees of flexion.

In March 2008, the Veteran underwent a post-operative VA examination after arthroscopic partial medial meniscectomy, abrasion chondroplasty with microfracture lateral and femoral condyle, and abrasion chondroplasty patellofemoral joint and patella on July 11, 2007, due to internal derangement of the left knee with medial meniscal tear. The Veteran complained of his knee giving way, pain, and stiffness. The Veteran stated that he had not undergone physical therapy since his left knee surgery. He was told by his surgeon that he would like need a total knee replacement in the future. He reported no improvement from his surgery, and said he had increasing tightness and decreased mobility, especially with any walking or repetitive activity was increasingly difficult. The examiner noted a weight gain of 40 pounds between the surgery and the present time, without the ability to use the treadmill since the surgery. The Veteran reported chronic pain at a 4 on a scale of 1 to 10, and flare-ups to an 8, at a frequency of 3 to 4 times a month, lasting 10 to 12 hours. Aggravating factors included trying to get down to look under a bed, getting up and down from a sitting position, immobility, walking greater than 30 minutes, quick stops, twisting turns, and an inability to bend or squat, stand for long period of time, or lift greater than 30 pounds. The Veteran reported no impact on eating, but grooming and bathing caused increased difficulty with standing. He noted that he did shower, but stated that he occasionally had to prop his leg on the tub, because he could not standing on the leg for greater than a few minutes at a time. He had some difficulty dressing, and could not bend over. He reported that driving required frequent repositioning. 

The Veteran reported pain the patellar medial aspect and on the posterior aspect. He had stiffness and swelling, but no heat or redness. He did have giving way once or twice a month, but no falls that required medical follow-up. He reported locking 1 to 2 times per month, and had some fatigability and lack of endurance. He denied any side effects from his treatments, and was employed. He reported no additional limitation with flare-ups. He denied use of crutches, brace, cane or corrective shoes. He reported feeling like he may have dislocations when the knee was locking, stating that if he rotates his knee in a rolling motion, it will pop back and he will be able to continue. He had no constitutional symptoms of inflammatory arthritis.

On examination, the Veteran ambulated 6 yards with a mild left limp, turning very awkwardly, with bilateral out toeing. There was a slight increase in size in the left knee, as compared to the right knee. Palpation did not elicit tenderness. Range of motion testing revealed flexion at 0 to 20 degrees, with discomfort at 20 degrees. Extension was to 0 degrees. The examiner noted this was a stable knee, and the Veteran was negative for medial and lateral collateral ligament testing. The Veteran was negative on McMurray's and Lachman's test. Repetition of range of motion testing times 6 showed increasing range of motion to 0 to 45 degrees, with increasing pain throughout 1 through 6. There were no other Deluca criteria noted.

December 2008 VA treatment records show the Veteran received a prescription for a hinged knee brace.

April 2011 VA treatment records include an x-ray report showed no acute fracture, dislocation, or joint effusion. There was mild degenerative joint disease, more advanced than seen on the right. There was also tibial spine narrowing, subchondral sclerosis along the tibial plateau, and tricompartmental osteophyte formation.

The Veteran underwent another VA examination in May 2013. The examiner noted a diagnosis of degenerative joint disease of the left knee. Range of motion testing showed flexion to 120 degrees without objective evidence of painful motion, and extension to 0 degrees, without objective evidence of painful motion. Repetitive use testing revealed no additional limitation in range of motion or any function loss or impairment of the knee or lower leg. The Veteran had no tenderness or pain to palpation for joint line or soft tissues. Strength testing showed full muscle strength in the left knee. All stability tests were normal, and there was no evidence or history of recurrent patellar subluxation or dislocation. The examiner noted the Veteran had a left meniscal tear, and arthroscopic surgery in 2000 to repair his meniscus. The examiner noted the existence of scars, but reported they were not painful or unstable, or of an area greater than 6 square inches. The Veteran denied use of assistive devices. There was no x-ray evidence of patellar subluxation, and, other than degenerative arthritis of the left knee, there were no other significant diagnostic test findings.

June 2014 VA treatment records reveal that inspection of the left knee showed no deformity, mass, induration, warmth, erythema, swelling, or tibial torsion, and a normal axial alignment and foot arch. There was no tenderness of the lateral wall trochlear groove, the medial wall trochlear groove, the lateral patellar facet, the medial patellar facet, the superior pole patella, the inferior pole patella, the tibial tubercle, the medial femoral condyle, the adductor tubercle, the medial joint line, fine lateral joint line, the medial tibial plateau, the lateral femoral condyle, Gerdy's tubercle, the lateral tibia plateau, the head of fibula, or the neck of fibula. Soft tissue palpation revealed no tenderness of the quadriceps tendon, the lateral patellar retinaculum, the medial patellar retinaculum, the prepatellar bursa, the patellar tendon, the fat pad, the medial collateral ligament, the pes anserinus, the saphenous nerve, the illotibial tract, the lateral collateral ligament, the popliteal fossa, the biceps femoris tendon, the gastrocnemius, the intrapatellar tendon, or the common peroneal nerve. Active range of motion testing revealed no crepitus or pain with motion and normal flexion, normal extension, normal medial rotation, and normal lateral rotation. Passive range of motion showed normal flexion, normal extension, normal medial rotation, normal lateral rotation, normal popliteal angle and no pain with motion. A stability test showed no laxity, subluxation, or ligamentous instability, negative anterior drawer sign, negative posterior drawer, negative reverse pivot shift test, and negative Lachman test. Special tests showed negative McMurray's test and negative Apley's compression test. Strength testing showed no hamstring weakness or quadriceps weakness, and normal muscle strength.

The Veteran has also submitted lay evidence in support of his claim. In a March 2008 statement, the Veteran asserted he was not able to walk distances without his left knee giving out, and had to concentrate on using other muscles to maintain a standing position. He stated he was not able to make sharp turns when he was walking due to pain and the knee cap shifting as if it was going to pop out of the socket. He stated he was not able to place any pressure on the knee cap. He noted that his osteoarthritis was not mild, but was severe because the knee was always stiff and the movement was not the same as the right. He stated he could not exercise due to pain, swelling and limited movement of the knee, which caused his morbid obesity.

The Veteran's left knee disability is currently rated at 20 percent disabling, pursuant to DCs 5258-5010. Under DC 5258, a rating of 20 percent is available for dislocated semilunar cartilage (meniscus), with frequent episodes of locking, pain, and effusion into the joint. An evaluation greater than 20 percent is not available under DC 5258. 38 C.F.R. § 4.71a.

Under DC 5010, traumatic arthritis, substantiated by X-ray findings, should be rated as degenerative arthritis. Degenerative arthritis established by X-ray findings is rated under DC 5003, which is rated based on the limitation of motion under the appropriate diagnostic code for the specific joint or joints involved. When, however, the limitation of motion of the specific joint or joints involved is noncompensable (zero percent) under the appropriate diagnostic codes, a rating of 10 percent is for application for each such major joint or group of minor joints affected by limitation of motion, to be combined, not added under DC 5003. Limitation of motion must be objectively confirmed by findings such as swelling, muscle spasm, or satisfactory evidence of painful motion. 38 C.F.R. § 4.71a, DC 5003 (2014). The knee is considered a major joint. 38 C.F.R. § 4.45 (2014). Here, the overall record evidence reflects that the Veteran demonstrates zero degree extension and limitation of flexion of the left knee, with swelling, popping, grinding and clicking. The Board finds that an award of a separate rating in this case does not amount to pyramiding, as the Veteran's 20 percent evaluation under DC 5258 does not consider limitation of motion, swelling, popping, grinding or clicking. Thus a separate 10 percent rating is appropriate for arthritis with limitation of flexion, as of March 9, 2004, the date of claim. DCs 5003, 5260.

The Board has also considered whether a referral for extraschedular rating is warranted. See Thun v. Peake, 22 Vet. App. 111, 115 (2008). Initially, there must be a comparison between the level of severity and symptomatology of the claimant's service-connected disability with the established criteria found in the rating schedule for that disability. Under the approach prescribed by VA, if the criteria reasonably describe the claimant's disability level and symptomatology, then the claimant's disability picture is contemplated by the rating schedule; therefore, the assigned schedular evaluation is adequate, and no referral is required. See VAOPGCPREC 6-96; see also Fisher v. Principi, 4 Vet. App. 57, 60 (1993). 

The schedular evaluation for the Veteran's left knee disability is not inadequate. The Veteran has complained of pain, feelings of giving way, decreased movement, swelling, popping, grinding and clicking, all of which are contemplated by the schedular criteria. The Veteran merely disagrees with the assigned evaluation for his level of impairment. In other words, he does not have any symptoms from his service-connected disorder that are unusual or are different from those contemplated by the schedular criteria. The available schedular evaluations reasonably describe the service-connected disability; thus, the schedular evaluations are adequate to rate the Veteran's disability. The Board need not determine whether the claimant's disability picture exhibits other related factors such as those provided by the regulation as "governing norms" such as "marked interference with employment" and "frequent periods of hospitalization." See Thun, 22 Vet. App. at 115. Referral for extraschedular consideration is not warranted. See VAOPGCPREC 6-96. 

Entitlement to a total disability rating based on individual unemployability (TDIU) is an alternative theory of all claims for a higher disability rating. Rice v. Shinseki, 22 Vet. App. 447, 453-54 (2009). TDIU may be raised explicitly by a claimant or inferred from the record. An inferred claim for a TDIU is raised as part of an increased rating claim only when certain requirements are met. Jackson v. Shinseki, 587 F.3d 1106, 1109-10 (2009). TDIU is raised by inference when: (1) submits evidence of a medical disability; (2) makes a claim for the highest rating possible; and (3) submits evidence of unemployability. See Roberson v. Principi, 251 F.3d 1378, 1384 (Fed. Cir. 2001). In the present appeal, the Veteran is employed. Thus, the Board concludes that the Roberson requirements are not met and that consideration of TDIU is not warranted.

As such, the Board finds that the preponderance of the evidence is against the Veteran's increased rating claim. Consequently, the benefit-of-the-doubt rule does not apply, and the claim must be denied. 38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.102.


ORDER

A disability evaluation in excess of 20 percent for a left knee disability due to dislocated semilunar cartilage is denied.

A separate 1
0 percent rating, but no higher, for arthritis with limitation of motion of the left knee is granted, effective March 9, 2004, subject to the laws and regulations governing monetary awards. 




____________________________________________
WAYNE M. BRAEUER
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs