# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 04-1001

Stanley J. Palczewski, Appellant,

v.

R. James Nicholson,
Secretary of Veterans Affairs, Appellee.

On Appeal from the Board of Veterans' Appeals

(Argued September 28, 2006                                    Decided     April 24, 2007 )

*David T. Landers*, of Washington D.C., for the appellant.

*Caren H. Kang*, with whom *Tim S. McClain,* General Counsel; *R. Randall Campbell*, Assistant General Counsel; and *Brian B. Rippel*, Deputy Assistant General Counsel, all of Washington, D.C., were on the brief, for the appellee.

Before KASOLD, HAGEL, and MOORMAN, *Judges.*

HAGEL, *Judge*: Stanley J. Palczewski, through counsel, appeals a February 17, 2004, decision of the Board of Veterans' Appeals (Board) that, among other dispositions, denied entitlement to service connection for tinnitus and bilateral hearing loss. The Court has jurisdiction pursuant to 38 U.S.C. §§ 7252(a) and 7266(a) to review this Board decision. Because the Court finds that 38 C.F.R. § 3.385 (2006) is in accordance with 38 U.S.C. § 1110 and a valid exercise of the Secretary's authority pursuant to 38 U.S.C. § 501, the Board's February 2004 decision with respect to denial of entitlement to service connection for hearing loss is affirmed. Because VA failed to fulfill its duty to assist pursuant to 38 U.S.C. § 5103A(d) by not providing Mr. Palczewski with a medical examination with respect to his claim for entitlement to VA benefits for tinnitus, that part of the Board's February 2004 decision that denied entitlement to service connection for tinnitus is vacated, and that matter is remanded for additional development and readjudication consistent with this opinion.

# I. BACKGROUND

Mr. Palczewski served on active duty in the U.S. Army from February 1995 to February 1999. An October 1994 enlistment medical examination reports "normal" ears and contains audiometry results, which list pure tone decibel ("dB") thresholds of "0" at all frequencies, except 6,000 hertz ("Hz"), with readings of 30 dB in the right ear and 10 dB in the left ear. Record (R.) at 23. An accompanying report of medical history prepared by Mr. Palczewski is negative for hearing loss.

On September 20, 1999, Mr. Palczewski underwent an audiogram. The audiometry report lists pure tone dB thresholds of "0" for all frequencies except 5 dB at 500 Hz and 15 dB at 6,000 Hz in the right ear, and 5 dB at 3,000 Hz and 40 dB at 6,000 Hz in the left ear. *See* R. at 45. A December 1998 separation examination report contained audiometry results, including puretone dB thresholds of 10 dB at 500 Hz and 20 dB at 6,000 Hz in the right ear, and 10 dB at 500 Hz and 45 dB at 6,000 Hz in the left ear. All other pure tone dB thresholds were listed as "0." R. at 55. This report noted high frequency hearing loss.

In February 1999, Mr. Palczewski filed an application for VA disability compensation for high frequency hearing loss and tinnitus. In June 1999, he was provided a VA audio examination. The examination report indicates pure tone threshold results of 10 dB at 500 Hz; 5 dB at 1,000 Hz; 5 dB at 2,000 Hz; 5 dB at 3,000 Hz; and 10 dB at 4,000 Hz for the right ear, and 5 dB at 2,000 Hz; 0 dB at 500, 1,000, 3,000, and 4,000 Hz for the left ear. The examiner found speech recognition scores of 98% for the right ear and 96% for the left ear, which were considered "excellent" by the examiner. R. at 139. Based on these results, the examiner found that Mr. Palczewski had normal hearing, except for a mild hearing loss at 6,000 Hz in the left ear. At this examination, Mr. Palczewski reported experiencing a high-pitched ringing in both ears that "comes and goes." R. at 138-39. In July 1999, a VA regional office denied his application for compensation for bilateral hearing loss and tinnitus. Mr. Palczewski appealed this decision to the Board.

In February 2004, the Board issued the decision now on appeal, in which it continued to deny entitlement to disability compensation for bilateral hearing loss and tinnitus. Specifically, the Board determined that, pursuant to 38 C.F.R. § 3.385 (2006), Mr. Palczewski "does not have a bilateral hearing loss disability for service connection purposes." R. at 8. The Board based

2

this finding on the June 1999 VA examination report, which indicated pure tone "thresholds of less than 40 [dB] at the pertinent frequencies, and thresholds of 26 [dB] or greater at less than three of the pertinent frequencies for both ears." *Id*. The Board also noted that Mr. Palczewski's speech recognition scores were greater than 94% in both ears. The Board considered Mr. Palczewski's reports of hearing loss, but found that the examination results were "not to the degree required to establish the presence of a disability for service connection purposes." *Id*. The Board also denied entitlement to disability compensation for tinnitus based on a finding that there was no medical evidence of a nexus between Mr. Palczewski's reports of tinnitus and his active military service. The Board also determined that VA satisfied its duty to assist Mr. Palczewski under the Veterans Claims Assistance Act of 2000, Pub. L. No. 106-475, 114 Stat. 2096.

On appeal, Mr. Palczewski makes three assignments of error. First, he argues that the record indicates that he has experienced high frequency hearing loss since his separation from service and that the only basis for the Board's denial of entitlement to disability compensation for that condition is an ultra vires regulation, 38 C.F.R. § 3.385, which precludes from service connection any hearing loss at frequencies above 4,000 Hz.[1] Mr. Palczewski argues that this regulation is flawed because "there is no statutory basis for this regulation and it is not in accordance with the provisions of 38 U.S.C. § 1110." Appellant's Brief (Br.) at 7. Specifically, he argues that the Secretary's authority to restrict the payment of compensation for a disability is limited to part 4 of title 38, Code of Federal Regulations. Second, he argues that VA failed to fulfill its duty to assist because it did not provide him with a thorough and contemporaneous medical examination. Finally, he argues that his statements regarding experiencing ringing in his ears during service are sufficient to establish a nexus between his current diagnosis of tinnitus and his active military service.

---

[1] Pursuant to 38 C.F.R. § 3.385:

> For the purposes of applying the laws administered by VA, impaired hearing will be considered to be a disability when the auditory threshold in any of the frequencies 500, 1000, 2000, 3000, 4000 Hertz is 40 decibels or greater; or when the auditory thresholds for at least three of the frequencies 500, 1000, 2000, 3000, or 4000 Hertz are 26 decibels or greater; or when speech recognition scores using the Maryland CNC Test are less than 94 percent.

In response, the Secretary argues that the Court should affirm the Board's February 2004 decision with respect to the denial of service connection for hearing loss, because Mr. Palczewski has not provided any evidence that he currently has a hearing disability in accordance with 38 C.F.R. § 3.385. Regarding the validity of 38 C.F.R. § 3.385, the Secretary argues that he was not arbitrary in limiting hearing "disability" to the five frequencies listed in the regulation. The Secretary refers to his previously articulated reasons for doing so, including the following:

> (1) Most of the [speech sound] energy is concentrated in the frequency range between 500 and 2000 Hz; (2) VA, recognizing prevalence of high frequency hearing loss in the veteran population, included frequencies of 3000 and 4000 Hz; (3) frequencies above 4000 Hz are associated with presbycusis (hearing loss associated with the aging process); and (4) none of the branches of military services includes 6000 Hz in induction physical audiograms.

Secretary's Br. at 9; *see also* 55 Fed. Reg. 12,348 (Apr. 3, 1990) (notice of final rulemaking regarding § 3.385). The Secretary notes that this Court repeatedly has cited 38 C.F.R. § 3.385 to determine whether a claimant currently manifests a disability. Based on VA's explanation of its rationale for excluding frequencies above 4,000 Hz when defining when a hearing loss is a disability and the Court's reliance on § 3.385, the Secretary argues that the regulation is not plainly erroneous or contrary to 38 U.S.C. § 1110. Particularly, he argues that, because section 1110 does not define "disability," VA's determination of when a loss of hearing becomes a disability in § 3.385 should be afforded deference.

Further, the Secretary argues that, because Mr. Palczewski has failed to present evidence of a current disability, he is not entitled to an additional VA medical examination under 38 U.S.C. § 5103A(d). Finally, the Secretary argues that the Board's decision with respect to Mr. Palczewski's claim for VA benefits for tinnitus should be vacated and the matter remanded to provide Mr. Palczewski with a VA medical examination.

4

## II. ANALYSIS

### A. Bilateral Hearing Loss

#### 1. Validity of 38 C.F.R. § 3.385

"The Secretary has the authority to prescribe all rules and regulations which are necessary or appropriate to carry out the laws administered by [VA] and are consistent with those laws." 38 U.S.C. § 501. This authority includes permission to establish "regulations with respect to the nature and extent of proof and evidence . . . to establish the right to benefits under such laws." 38 U.S.C. § 501(a)(1).

When a court reviews an agency's construction of the statute which it administers, the process is twofold. *See Terry v. Principi*, 340 F.3d 1378, 1381-82 (Fed. Cir. 2003). First, the court must consider whether Congress has directly spoken to the precise questions at issue. *See Chevron U.S.A., Inc. v. NRDC*, 467 U.S. 837, 844 (1984); *see also Terry*, 340 F.3d at 1382. If the answer is yes (i.e., the intent of Congress is clear), that is the end of the matter for the court, as the agency must give effect to the unambiguously expressed intent of Congress. *Id*. If, however, the court determines that Congress has not directly spoken to the question at issue or that the statute is ambiguous with regard to that issue, the court may not simply impose its own construction of the statute, as would be necessary in the absence of an administrative interpretation. *Id*. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible interpretation of the statute. *Id*.

"[S]ubstantial deference is given to the statutory interpretation of the agency authorized to administer the statute." *Livesay v. Principi*, 15 Vet.App. 165, 172 (2001) (en banc) (citing *Chevron*, 467 U.S. at 844); *see also Tallman v. Brown*, 7 Vet. App. 453, 463-65 (1995). Therefore, we will defer to "VA's reasonable interpretation of a statutory provision when the law does not directly address the precise question at issue." *Gallegos v. Principi*, 283 F.3d 1309, 1312 (Fed. Cir. 2002). The Secretary's interpretation will not be set aside unless it is "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with the law." 38 U.S.C. § 7261(a)(3)(A); *see also Chevron*, 467 U.S. at 844.

Pursuant to 38 U.S.C. § 1110, "for a disability resulting from personal injury suffered or disease contracted in the line of duty, or for aggravation of a preexisting injury suffered or

5

disease contracted in the line of duty . . . , the United States **will pay** to any veteran . . . compensation as provided in this subchapter." (Emphasis added.) The statute limits the Government's responsibility to compensate a veteran only "if the disability is the result of the veteran's own willful misconduct or abuse of alcohol or drugs." *Id.*

The Secretary implemented 38 C.F.R. § 3.385 to define "what constitutes a hearing disability." 55 Fed. Reg. 12,348. Pursuant to § 3.385, hearing loss is considered a disability for compensation purposes "when the audiometry threshold in any of the frequencies 500, 1,000, 2,000, 3,000, or 4,000 [Hz] is 40 [dB] or greater; or when audiometry thresholds for at least three of the frequencies 500, 1,000, 2,000, 3,000, or 4,000 [Hz] are 26 [dB] or greater; or when speech recognition scores using the Maryland CNC Test are less than 94[percent]."

The term "disability" is not generally defined by any statute. *See* 38 U.S.C. § 101; *see also* 38 C.F.R. § 3.1 (2006). Although the statute does not specifically define "disability," this Court has held that "disability" as it is used in section 1110 "should be construed to refer to impairment of earning capacity due to disease, injury, or defect, rather than to the disease, injury, or defect itself." *Allen v. Brown*, 7 Vet.App. 439, 448 (1995) (relying on this Court's decision in *Hunt v. Derwinski*, 1 Vet.App. 292, 296-97 (1991), which held that VA's interpretation of disability contained in 38 C.F.R. § 4.1 (1990), which, at that time, defined disability as "impairment in earning capacity resulting from such diseases and injuries and their residual conditions" was reasonable in light of the gap left by Congress in the statute). With regard to when a hearing loss constitutes a disability, the Secretary has promulgated a more specific regulatory interpretation in § 3.385. Thus, our inquiry must focus on whether § 3.385 is a permissible interpretation and refinement of "disability." 38 U.S.C. § 1110.

In implementing § 3.385, VA stated that "the purpose of the regulation is to provide a gauge of what constitutes a hearing disability." 55 Fed. Reg. 12,348; *see also* 58 Fed. Reg. 48,483 (Sept. 16, 1993).[2] VA explained that the regulation applies before a determination regarding service connection is made, specifically, the regulation establishes that "a change in

---

[2] Following Court decisions applying, yet criticizing, § 3.385, VA amended the regulation to "clearly limit the regulation to a definition of disability due to impaired hearing, and no longer suggest that the rule governs service connection once a disability has been established." 58 Fed. Reg. 48,483. The history of this regulation was noted and the amended version was applied by this Court in *Heuer v. Brown*, 7 Vet.App. 379 (1995).

hearing as a result of military service is a disability only if it exceeds the specified levels" in the regulation. 55 Fed. Reg. 12,348. Further, VA articulated precise reasons for not including hearing loss at thresholds above 4,000 Hz. *See id.*

Here, the challenged regulation, 38 C.F.R. § 3.385, prescribes the level at which a hearing loss becomes a disability for purposes of entitlement to VA compensation. Mr. Palczewski attempts to distinguish § 3.385 and 38 C.F.R. § 3.303(c) (2006), which states that refractive error of the eye, among other conditions, is not a disease or injury within the meaning of the applicable legislation for purposes of service connection, by arguing that § 3.385 "arbitrarily limits the definition of disability due to impaired hearing based on the severity of the hearing loss" instead of excluding a particular type of hearing loss from the definitions of injury and disease. Appellant's Br. at 14. He argues that the severity of a condition is a consideration for the part 4 rating schedule of title 38 of the Code of Federal Regulations. In this respect, he argues that the severity of hearing loss incurred in or aggravated by military service should affect the disability rating assigned, not whether the hearing loss is considered service connected. He proceeds to attack each of the Secretary's stated rationales for § 3.385, calling the reasons "circular logic" and noting that, contrary to VA's assertion that the military services do not test at 6,000 Hz frequency, at a June 1999 VA audio examination his hearing was tested at 6,000 Hz. He also questions the fairness of the regulation.

In explaining its reasons for excluding hearing losses at frequencies above 4,000 Hz, VA noted that "studies have shown that even when all frequencies above 4,000 Hz are eliminated by means of filtering, speech recognition scores remain at the 95% level." 55 Fed. Reg. 12,348. The Secretary emphasizes this statement and argues that VA was reasonable in limiting "disability" to hearing losses in frequencies affecting speech recognition, which would affect a veteran's earning capacity.

Having considered these arguments and caselaw, we hold that VA's interpretation of a hearing disability as expressed in the explanatory statement of § 3.385 is reasonable. As previously noted, Congress did not precisely define the term "disability" in section 1110. Thus, the Court will afford the Secretary's definition contained in § 3.385 substantial deference. *See Chevron*, 467 U.S. at 844. In explaining the rationale for his definition of hearing disability, the Secretary noted that only changes in hearing that exceed specified levels should be considered

disabilities and that not every change in hearing in service should be service connected. 55 Fed. Reg. 12,348. In this respect, the limitation contained in § 3.385 is similar to that contained in 38 C.F.R. § 3.303(c) (2006), which was upheld by the U.S. Court of Appeals for the Federal Circuit (Federal Circuit) in *Terry*, *supra*. As noted above, that regulation provides that a "refractive error of the eye" is not a disease or injury as defined in the veterans benefits statutory system. In its decision, the Federal Circuit agreed with this Court's holding in *Winn v. Brown*, 8 Vet.App. 510, 516 (1996), that "Congress could not have intended to include every defect, infirmity, and disorder within the scope of compensable disabilities." *Terry*, 340 F.3d at 1386.

With respect to limiting "hearing disability" to hearing losses below 6,000 Hz, the Secretary looked to the level of hearing that is affected by speech recognition. This rationale is in accordance with this Court's interpretation of the term "disability" as an "impairment of earning capacity." *Allen*, 7 Vet.App. at 448.

The Secretary's regulations are entitled to deference provided that he articulates a satisfactory explanation for his actions, including a "rational connection between the facts found and the choice made." *Burlington Truck Lines v. United States*, 371 U.S. 156, 168 (1962). Here, the Court concludes that the Secretary has provided a reasonable explanation of the rationale for excluding from the definition of hearing disability, hearing loss at a frequency greater than 4,000 Hz. Despite Mr. Palczewski's disagreement with the Secretary's interpretation of hearing disability, he has not alleged any basis for finding that interpretation "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with the law." 38 U.S.C. § 7261(a)(3)(A). The fact that evaluation of severity is usually limited to part 4 of the rating schedule is not a sufficient reason to invalidate § 3.385 given VA's wide discretion in interpreting the statutes it administers. *See Livesay*, 15 Vet.App. at 172. Thus, the Court concludes that the Secretary's regulatory definition is permissible and not "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with the law." 38 U.S.C. § 7261(a)(3)(A); *see Chevron, supra*.

*2. VA's Duty to Provide a Contemporaneous Medical Examination in the Context of a Service-Connection Determination Based on Hearing Loss*

As described previously in this opinion, the Court faces a unique situation here because VA defines hearing loss disability (and thus service connection) in terms of the degree of the hearing impairment, an element that may fluctuate between the time the claim is filed and the

time of a final agency determination, i.e., when the Board issues its opinion. A hearing loss is not a "disability" unless or until it reaches a threshold defined by 38 C.F.R. § 3.385. Consequently, where the Board reviews whether a veteran's hearing is sufficiently degraded to meet VA requirements to render the hearing loss a "disability," the Board incorporates into that determination the level of the impairment, making the determination akin to that of the appropriate disability rating and setting it apart from the traditional determination of whether a disability is service connected. *See Caluza v. Brown*, 7 Vet.App. 498, 506 (1995). Thus, this Court's line of cases describing the requirement of a "contemporaneous" examination upon which a service-connected disability rating is based is applicable to a determination of service connection in the limited circumstance when that determination is based upon whether the level of hearing impairment qualifies it as a disability. *Id.* However, such application does not automatically, based on the mere passage of time, without more, render inadequate a medical examination upon which a service-connection determination for hearing loss was based.

Applying the definition of "disability" contained in § 3.385 to the results of the June 1999 hearing examination that was approximately one-month old, the regional office determined that Mr. Palczewski did not have a hearing loss disability. Without a current disability, of course, there can be no service connection and, thus, no disability compensation. *See Caluza*, 7 Vet. App. at 506. On appeal, despite the lack of any evidence in the record since the regional office decision indicating an increase in the severity of Mr. Palczewski's hearing loss and without even an assertion that his hearing has worsened, he argues that the passage of more than 50 months between the June 1999 hearing examination and the February 2004 Board decision alone requires VA to provide him with a new hearing examination. It is within this unique circumstance, in which the very definition of what constitutes a disability turns on the level of hearing loss, that we must decide whether VA has satisfied its duty to assist the veteran in developing his claim by providing a contemporaneous medical examination.

Section 5103A of title 38, U.S. Code, requires the Secretary to "make reasonable efforts to assist a claimant in obtaining evidence necessary to substantiate the claimant's claim for benefits." 38 U.S.C. § 5103A(a), (b). Pursuant to 38 C.F.R. § 3.159(c)(4)(I) (2006), VA must provide a claimant a medical opinion or examination if the information and evidence of record does not contain sufficient competent medical evidence to decide the claim, but

9

(A) Contains competent lay or medical evidence of a current diagnosed disability or persistent or recurrent symptoms of disability;
(B) Establishes that the veteran suffered an event, injury or disease in service, or has a disease or symptoms of a disease listed in § 3.309, § 3.313, § 3.316, and § 3.317 manifesting during an applicable presumptive period provided the claimant has the required service or triggering event to qualify for that presumption; and
(C) Indicates that the claimed disability or symptoms may be associated with the established event, injury, or disease in service or with another service-connected disability.

*See* 38 U.S.C. § 5103A(d)(2). Moreover, when "the record does not adequately reveal the current state of the claimant's disability . . . , the fulfillment of the statutory duty to assist requires a thorough and contemporaneous medical examination." *Caluza*, 7 Vet.App. at 505-06; *see Schafrath v. Derwinski*, 1 Vet.App. 589, 595 (1991) (holding that "where the record does not adequately reveal the current state of a claimant's disability, a VA examination must be conducted"). The examination must be one that takes into account the records of prior medical treatment, so that the evaluation of the claimed disability will be a fully informed one. *See Green v. Derwinski*, 1 Vet.App. 121, 124 (1991). Mr. Palczewski asserts that the mere passage of time between the regional office's initial decision on his claim and the Board's review of that decision is sufficient to trigger VA's duty to provide an additional medical examination because the examination of record was not contemporaneous with the Board decision. The Court does not agree.

This Court's caselaw requiring a "contemporaneous" examination has not been applied in situations where the issue on appeal to the Board is a denial of service connection. Rather, the Court's cases regarding the requirement of a "contemporaneous" examination address situations in which service connection has been established and only the issue of the current level of disability is before the Board. *See Proscelle v. Derwinski*, 2 Vet. App. 629 (1992) (remanding a claim because the record did not adequately reveal the current state of the claimant's service-connected disability); *see also Francisco v. Brown*, 7 Vet.App. 55, 57-58 (1994) (holding that "[w]here an increase in the disability rating is at issue, the present level of disability is of primary importance"); *see also Bolton v. Brown*, 8 Vet.App. 185, 191 (1995) (finding that "'[w]here the veteran claims a disability is worse than when originally rated, and the available evidence is too old to adequately evaluate the current state of the condition, [] VA must provide

10

a new examination' to fulfill its duty to assist" (quoting *Olson v. Principi*, 3 Vet.App. 480, 482 (1992))); *Caffrey v. Brown*, 6 Vet.App. 377, 381 (1994) (holding that, in a claim for an increased rating, the Board erred by relying on a 23-month-old examination where the appellant submitted evidence to indicate that there had been a material change in his disability since that examination).

Mr. Palczewski was provided a VA examination for his claimed hearing loss in June 1999, one month prior to the regional office's decision denying service connection for hearing loss on the basis that he did not have a current hearing loss disability as defined by § 3.385. On appeal, Mr. Palczewski argues that he meets the requirements of 38 U.S.C. § 5103A(d)(2) and is entitled to another "thorough and contemporaneous" medical examination. Appellant's Br. at 21. He argues that there is current medical evidence of a disability because the June 1999 VA examination "clearly showed high frequency hearing loss." *Id*. However, the hearing loss experienced by Mr. Palczewski, as reflected in the June 1999 VA examination report, is not a disability as defined by § 3.385. Thus, contrary to his argument, the audiometry results in the June 1999 VA medical examination report do not establish that Mr. Palczewski has a current disability under § 3.385. The record does not contain any "competent lay or medical evidence of a current diagnosed disability or persistent or recurrent symptoms of disability" during the period between the regional office's decision and the Board's review of that decision that would have triggered VA's duty to consider whether an additional medical examination was "necessary" to render a decision on his hearing loss claim. 38 U.S.C. § 5103A(d).[3]

To the extent that Mr. Palczewski argues that he is entitled to a new medical examination because the June 1999 examination was not "contemporaneous" with the Board's February 2004 decision, that argument must fail. Although evidence submitted between the date of the regional office's decision and the Board's review of that decision could, in particular instances, conceivably require that a new medical examination be provided, the mere passage of time between those events does not. *See* 38 U.S.C. § 5103A(d)(2). Here, Mr. Palczewski has not

---

[3] The Board's decision on Mr. Palczewski's hearing loss disability claim was delayed as a result of the development and adjudication of his other claims, specifically, service connection for retropatellar pain syndrome of the right and left knees and entitlement to an initial rating in excess of 10% for degenerative disc disease of the lumbar spine. R. at 1. Regarding these other claims, throughout the appeal process, Mr. Palczewski submitted additional evidence regarding these disabilities, which, on appeal to the Board, resulted in remands of these claims for additional medical examinations. R. at 10-14, 180-87, 198-204.

11

submitted any additional evidence showing a change in his condition nor has he even alleged that his hearing has worsened. The Court finds that the June 1999 medical examination was contemporaneous with the July 1999 regional office decision being reviewed by the Board.

Mr. Palczewski has not cited any statute, regulation, or caselaw to support his theory that the Secretary did not fulfill his duty to assist by failing to seek an additional medical examination based solely on the mere passage of time between the regional office's decision and the Board's review of that decision. Further, he ignores *Caluza*, which clearly ties the requirement that the Secretary provide a thorough and contemporaneous examination to situations where "the record does not adequately reveal the current state of a claimant's disability. . . ." *Caluza*, 7 Vet.App. at 505.

Finally, the record does not reflect that Mr. Palczewski asserted before the regional office, Board or Court that there was a deficiency with the June 1999 VA medical examination or that he submitted or identified additional lay or medical evidence that raised the question of whether the medical evidence of record was sufficient to render a decision on his claim at the regional office or Board level. *See* 38 U.S.C. § 5103A(d)(2)(C). The Court, therefore, cannot conclude that VA violated its duty to assist in this instance by not providing an additional medical examination.

### B. Tinnitus

Mr. Palczewski argues that he is entitled to a reversal of the Board's denial of service connection for tinnitus because he has met the requirements necessary to establish entitlement to service connection. In order to establish a claim for service connection, the appellant generally must show (1) medical evidence of a current disability; (2) medical or, in certain circumstances, lay evidence of incurrence or aggravation of a disease or injury in service; and (3) medical evidence of a nexus between the claimed in-service injury or disease and the current disability. *See Caluza*, 7 Vet.App. at 506; *see also Hickson v. West*, 12 Vet.App. 247, 252 (1999). Here, although the Board concluded that Mr. Palczewski manifests tinnitus, the record does not contain a current medical diagnosis of tinnitus. The July 1999 VA examination report only notes Mr. Palczewski's reported history of periodic high-pitched ringing in the ears. R. at 138; *see Leshore v. Brown*, 8 Vet.App. 406, 409 (1995) (noting that "[e]vidence which is simply information recorded by a medical examiner, unenhanced by any additional medical comment by that

12

examiner, does not constitute 'competent medical evidence'"); *but see Savage v. Gober*, 10 Vet.App. 488, 497 (1997) (holding that, in certain circumstances, a relationship between a present disability and continuity of symptomatology since service may be demonstrated by lay statements because "such a relationship is one as to which a lay person's observation is competent"). In the examination report, the examiner clearly states that Mr. Palczewski has "normal hearing." R. at 139. However, considering that Mr. Palczewski experiences both hearing loss and symptoms of tinnitus, it is unclear whether this diagnosis encompasses both conditions and necessarily includes a determination regarding tinnitus. Because the current record lacks a specific diagnosis with respect to tinnitus, and as such, is also silent as to whether this condition, as acknowledged by the Board, is related to Mr. Palczewski's military service, the requirements to establish service connection for tinnitus have not been met. *See Caluza*, 7 Vet.App. at 506.

Notwithstanding the foregoing, the current record does show lay evidence of tinnitus during service and evidence of current symptoms of tinnitus, which does entitle Mr. Palczewski to a medical examination. *See* 38 U.S.C. § 5103A(d)(2). The Secretary concedes that the Board erred by not providing Mr. Palczewski a VA medical examination with respect to his claim for tinnitus. The Court, therefore, will vacate Mr. Palczewski's claim for entitlement to VA benefits for tinnitus and remand the matter for additional development consistent with this decision. *See Pond v. West*, 12 Vet.App. 341, 346 (1999) (holding that remand is the appropriate remedy when the Board fails to ensure proper development of the claim); *see also Tucker v. West*, 11 Vet.App. 369, 374 (1998) (finding that "where the Board has incorrectly applied the law, failed to provide an adequate statement of reasons or bases for its determinations, or where the record is otherwise inadequate, a remand is the appropriate remedy").

## III. CONCLUSION

Upon consideration of the foregoing analysis, the record on appeal, and the parties' briefs, that part of the February 17, 2004, decision of the Board that denied service connection for hearing loss is AFFIRMED. That part of the Board's February 17, 2004, decision that denied

13

service connection for tinnitus is VACATED, and that matter is REMANDED to the Board for readjudication consistent with this order.