Citation Nr: 1518696 
Decision Date: 04/30/15 Archive Date: 05/05/15

DOCKET NO. 10-24 709 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in St. Petersburg, Florida


THE ISSUES

1. Entitlement to a rating in excess of 30 percent for degenerative joint disease (DJD) of the left knee for the period on appeal prior to June 16, 2010.

2. Entitlement to a rating in excess of 30 percent for DJD of the left knee for the period on appeal from September 1, 2011.

3. Entitlement to a total disability rating based on individual unemployability due to service-connected disability (TDIU).

4. Entitlement to an extraschedular rating for service-connected DJD of the left knee.


REPRESENTATION

Veteran represented by: Robert V. Chisholm, Attorney


ATTORNEY FOR THE BOARD

M. C. Wilson, Associate Counsel


INTRODUCTION

The Veteran had active service from August 1979 to August 1983.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a July 2009 rating decision by the Department of Veterans Affairs (VA) Regional Office (RO) in St. Petersburg, Florida.

In a rating decision dated November 1984, the RO granted service connection for residuals of a left knee injury and assigned a rating of 10 percent, effective from August 6, 1983. The RO assigned a temporary total rating for a period of convalescence following a partial medial meniscectomy, effective from August 5, 1984 to September 30, 1984, and then assigned a 10 percent rating, effective from October 1, 1984. The RO continued the 10 percent rating in rating decisions issued in August 1985, December 1994, and June 2006. As the Veteran did not express disagreement with these determinations nor was additional evidence pertinent to his claim physically or constructively associated with the claims folder within one year of these determinations, they are final. See 38 U.S.C.A. § 7105 (West 2014); 38 C.F.R. §§ 3.156(b), 20.201 (2014).

In April 2009, the Veteran submitted a claim for an increased evaluation for his left knee disability that led to the present appeal. In a July 2009 rating decision, the RO continued the Veteran's 10 percent rating. In July 2010, subsequent to a June 2010 total knee replacement, the RO issued a rating decision granting a temporary total rating, effective from June 16, 2010, and a 30 percent rating, effective from September 1, 2011.

In a February 2014 decision, the Board determined that the criteria for a rating in excess of 30 percent are not met for the period from September 1, 2011. Also in the February 2014 decision, the Board granted the following with regard to the period on appeal prior to June 16, 2010: (1) a rating of 30 percent for DJD of the left knee with chronic ACL tear, status post total knee replacement, due to instability; and (2) a separate 10 percent rating for left knee arthritis as secondary to DJD with chronic ACL tear, status post total knee replacement. In a March 2014 rating decision, the RO determined that the effective date of these ratings is October 1, 1984.

The Veteran appealed the Board's February 2014 decision to the United States Court of Appeals for Veterans Claims (Court). Pursuant to an October 2014 Joint Motion for Partial Remand (JMR), the Court vacated the February 2014 decision with regard to the Board's denial of an increased rating for his left knee disability for the period from September 1, 2011, and the Veteran's entitlement to an increased rating for his left knee disability for the period on appeal prior to June 16, 2010. Specifically, with regard to the Veteran's entitlement to an increased rating from September 1, 2011, the JMR indicates that VA should provide an examination to assess the current severity of the Veteran's left knee disability. With regard to the Veteran's entitlement to an increased rating prior to June 16, 2010, the JMR indicates that the Board failed to provide adequate reasons and bases for its denial of the assignment of a rating for dislocation of the semilunar cartilage or symptomatic removal of semilunar cartilage. See 38 C.F.R. § 4.71a, Diagnostic Codes 5258 and 5259 (2014). The Court remanded these issues, to include consideration of the Veteran's entitlement to a TDIU, to the Board for action consistent with the terms of the JMR.

Consistent with the terms of the October 2014 JMR, the Board finds that the issues concerning the Veteran's entitlement to a rating in excess of 30 percent for DJD of the left knee for the period on appeal from September 1, 2011 and his entitlement to a TDIU must be remanded for further development. In addition, the Board remands to the AOJ the issue of the Veteran's entitlement to an extraschedular rating for DJD of the left knee. These issues are addressed in the REMAND portion of the decision below and are REMANDED to the Agency of Original Jurisdiction (AOJ).



FINDING OF FACT

For the period on appeal prior to June 16, 2010, the Veteran's left knee disability was productive of symptoms such as painful motion and instability, but did not result in compensable limitation of flexion or extension, ankylosis, impairment of tibia and fibula, or genu recurvatum.


CONCLUSION OF LAW

For the period on appeal prior to June 16, 2010, the criteria for a rating in excess of 30 percent for DJD of the left knee were not met. 38 U.S.C.A. §§ 1155, 5107(b) (West 2014); 38 C.F.R. §§ 3.102, 4.1, 4.2, 4.3, 4.6, 4.21, 4.59, 4.71a, Diagnostic Codes 5256-5263 (2014).


REASONS AND BASES FOR FINDING AND CONCLUSION

I. Duties to Notify and Assist

VA has a duty to notify and assist claimants in substantiating claims for VA benefits. See 38 U.S.C.A. §§ 5103, 5103A (West 2014); 38 C.F.R. § 3.159 (2014). The Board finds that VA provided the required notice in a letter dated June 2009. In addition, pursuant to VA's duty to assist a claimant in the development of a claim, VA provided an examination in June 2009 to assess the nature and severity of his left knee disability, which is adequate upon which to base a determination. 38 U.S.C.A. § 5103A; 38 C.F.R. § 3.159.

The Board finds that all necessary development has been accomplished and appellate review may proceed without prejudice to the Veteran. See Bernard v. Brown, 4 Vet. App. 384 (1993).


II. Increased Rating Claim

Disability ratings are determined by applying the rating criteria set forth in VA's Schedule for Rating Disabilities (Rating Schedule) and represent the average impairment of earning capacity. 38 U.S.C.A. § 1155 (West 2014); 38 C.F.R. § 4.1 (2014). The basis of disability evaluations is the ability of the body as a whole, or of the psyche, or of a system or organ of the body to function under the ordinary conditions of daily life including employment. 38 C.F.R. § 4.10 (2014).

In determining the severity of a disability, the Board is required to consider the potential application of various other provisions of the regulations governing VA compensation as well as the whole recorded history of the Veteran's disability. 38 C.F.R. §§ 4.1, 4.2 (2014); see generally Schafrath v. Derwinski, 1 Vet. App. 589 (1991). Where there is a question as to which of two evaluations shall be applied, the higher evaluation will be assigned if the disability more closely approximates the criteria for that rating. 38 C.F.R. § 4.7 (2014). Otherwise, the lower rating is assigned. Id. Additionally, while it is not expected that all cases will show all the findings specified, findings sufficiently characteristic to identify the disease and the disability therefrom and coordination of rating with impairment of function will be expected in all instances. 38 C.F.R. § 4.21 (2014). The Board has considered whether separate ratings for different periods of time are warranted based on the facts, which is a practice of assigning ratings that is referred to as "staging the ratings." See Hart v. Mansfield, 21 Vet. App. 505 (2007).

In general, all disabilities, including those arising from a single disease entity, are rated separately, and all disability ratings are then combined in accordance with 38 C.F.R. § 4.25. However, pyramiding, or evaluating the same manifestation of a disability under different diagnostic codes, is to be avoided. See 38 C.F.R. § 4.14 (2014). Thus, separate ratings under different diagnostic codes are only permitted if, for example, those separate ratings are assigned based on manifestations of the Veteran's disability that are separate and apart from manifestations for which the Veteran has already been rated. Esteban v. Brown, 6 Vet. App. 259, 261 (1994).

Disability of the musculoskeletal system is primarily the inability, due to damage or infection in parts of the system, to perform the normal working movements of the body with normal excursion, strength, speed, coordination and endurance. Functional loss may be due to the absence or deformity of structures or other pathology, or it may be due to pain, supported by adequate pathology and evidenced by the visible behavior in undertaking the motion. Weakness is as important as limitation of motion, and a part that becomes painful on use must be regarded as seriously disabled. 38 C.F.R. § 4.40. In Mitchell v. Shinseki, 25 Vet. App. 32 (2011), the Court held that, although pain may cause a functional loss, "pain itself does not rise to the level of functional loss as contemplated by VA regulations applicable to the musculoskeletal system." Rather, pain may result in functional loss, but only if it limits the ability "to perform the normal working movements of the body with normal excursion, strength, speed, coordination, or endurance." Id., quoting 38 C.F.R. § 4.40.

Evidence of pain, weakened movement, excess fatigability, or incoordination must be considered in determining the level of associated functional loss in light of 38 C.F.R. § 4.40, taking into account any part of the musculoskeletal system that becomes painful on use. DeLuca v. Brown, 8 Vet. App. 202 (1995). The provisions regarding the avoidance of pyramiding do not forbid consideration of a higher rating based on greater limitation of motion due to pain on use, including flare ups. 38 C.F.R. § 4.14 (2014). 

As per 38 C.F.R. § 4.71a, Diagnostic Code 5003, degenerative arthritis is to be evaluated on the basis of limitation of motion as per the diagnostic codes for the specific joint or joints. Id. If the limitation of motion is noncompensable under the appropriate diagnostic codes, a rating of 10 percent is assigned for each major joint or group of minor joints affected by limitation of motion. Id. Limitation of motion must be objectively confirmed by findings such as swelling, muscle spasm, or satisfactory evidence of painful motion. Id. In the absence of limitation of motion, a 10 percent rating can be assigned where there is x-ray evidence of involvement of 2 or more major joints or 2 or more minor joint groups and a 20 percent rating can be assigned if such involvement includes occasional incapacitating episodes. Id. Note (1) under Diagnostic Code 5003 provides that the 20 percent and 10 percent ratings based on x-ray findings will not be combined with ratings based on limitation of motion. Id. For the purpose of rating disability due to arthritis, the shoulder and knee are considered major joints. 38 C.F.R. § 4.45(f).

Normal range of motion of the knee is from 0 degrees of extension to 140 degrees of flexion. 38 C.F.R. § 4.71, Plate II (2014).

Under 38 C.F.R. § 4.71a, Diagnostic Code 5260, a noncompensable rating is warranted where knee flexion is limited to 60 degrees, a 10 percent rating is assigned where knee flexion is limited to 45 degrees, a 20 percent rating is warranted where knee flexion is limited to 30 degrees, and a 30 percent rating is assigned where knee flexion is limited to 15 degrees.

Under 38 C.F.R. § 4.71a, Diagnostic Code 5261, a noncompensable rating is warranted where knee extension is limited to 5 degrees, a 10 percent rating is assigned where knee extension is limited to 10 degrees, a 20 percent rating is warranted with extension is limited to 15 degrees, a 30 percent rating is warranted where extension is limited to 20 degrees, a 40 percent rating is assigned where knee extension is limited to 30 degrees, and a 50 percent rating is warranted for extension limited to 45 degrees.

Under 38 C.F.R. § 4.71a, Diagnostic Code 5257, a 10 percent rating is warranted where there is slight recurrent subluxation or lateral instability, a 20 percent rating is warranted where there is moderate recurrent subluxation or lateral instability, and a 30 percent rating is warranted where there is severe recurrent subluxation or lateral instability.

Under 38 C.F.R. § 4.71a, Diagnostic Code 5258, a 20 percent rating is warranted for dislocated semilunar cartilage with frequent episodes of "locking," pain, and effusion into the joint. Where there is symptomatic removal of semilunar cartilage, a 10 percent rating is warranted under 38 C.F.R. § 4.71a, Diagnostic Code 5259.

Here, as acknowledged previously, the Veteran filed a claim for increase for his service-connected left knee disability in April 2009, after the RO's previous determinations on the matter became final. The Board notes that the effective date of an award of increased compensation shall be the earliest date as of which it is ascertainable that an increase in disability occurred, if the application is received within one year from such date. 38 U.S.C.A. § 5110(b) (West 2014). The Board must therefore assess any ascertainable increase in disability from April 2008. Thus, the issue presented to the Board is whether the Veteran is entitled to increased or separate ratings for his left knee disability for the period on appeal prior to his June 16, 2010 total knee replacement. The Veteran has a 30 percent rating for instability (under Diagnostic Code 5257), which is the maximum possible rating for that symptom, and a separate rating of 10 percent for arthritis and painful motion (under Diagnostic Code 5003) for the period on appeal.

The evidence of record, to include an August 1985 orthopedic examination report, indicates that the Veteran underwent a partial left medial meniscectomy in 1984. May 2009 orthopedic surgery outpatient consult notes indicate that the Veteran walked without a limp or external support. 

The report of a June 2009 VA examination documents the Veteran's report of increasing, constant pain in his left knee. He reported weakness, stiffness, locking, giving way, and daily flare-ups of pain that were precipitated by walking more than one-quarter mile. He reported that the condition of his knee slowed him down and that he had to give up his former work as a roofer and transitioned to a job in lawn maintenance, which he performed over the previous twenty year period. Notably, the Veteran reported that he had to decrease his time at work due to his knee disabilities, such that he only worked an average of twenty-three hours per week instead of his usual forty hours per week over the previous twelve months. The Veteran did report, however, that he was able to carry out his activities of daily living.

The examiner reported that the Veteran was negative for giving way of the left knee, did not use any assistive devices, and was able to ambulate and walk on his toes-to-heels at that time, but was unable to squat due to knee pain. Physical examination revealed slight swelling and increased heat, crepitus, laxity of the left ACL, and 1+ positive drawer test. The collateral ligament showed no instability. Examination also revealed normal pulses in the lower extremities, no palpable loose bodies upon palpation, a negative Lachman test, and a negative McMurray test. The examiner measured a range of motion from 0 degrees of extension to 140 degrees of flexion, with pain at 105 degrees. Repetitive motion did not affect the Veteran's range of motion, pain, fatigability, weakness, coordination, or endurance.

The examiner reported that a February 2009 MRI report shows a completely torn ACL, extensively torn destroyed bilateral meniscus, degenerative changes severe on the medial and lateral articular compartment with extensive cartilage loss, and two intra-articular loose bodies. The examiner noted the following diagnoses with regard to the Veteran's left knee: chronic tear of the ACL, status post surgery and meniscectomy, DJD, and loose bodies.

A July 2009 VA orthopedic surgery outpatient note documents bilateral knee pain and joint tenderness. With regard to his left knee, the Veteran had a positive anterior drawer test, intact lateral collateral ligament (LCL), intact medial collateral ligament (MCL), and a negative McMurray test. The report of a March 2010 VA examination indicates that the Veteran's bilateral knee condition was stable and the knees were functional with full range of motion at that time.

In June 2010, the Veteran underwent left knee total arthroplasty at a VA medical center. The operation report indicates that prior to the procedure, the Veteran ambulated with the assistance of a cane and brace, and was limited to walking one or two blocks before stopping.

After careful review of the evidence, the Board finds that increased and/or separate ratings are not warranted for the period on appeal prior to June 16, 2010.

With regard to whether a rating is warranted under Diagnostic Code 5258 for the dislocation of semilunar cartilage, the Board acknowledges non-VA physician Dr. D.M.'s February 2015 finding that the Veteran suffered from a torn meniscus prior to his knee replacement. The Board accepts that tears in the medial and lateral menisci are "dislocated menisci" or "dislocated semilunar cartilage," but finds that there is no evidence that the Veteran experienced frequent episodes of "locking," pain, and effusion during the relevant period, as required by the rating criteria. In so finding, the Board notes that the examiner who conducted the Veteran's June 2009 examination documented the Veteran's report of locking and pain, but the evidence fails to show that such episodes were frequent during the period in question. In addition, this evidence fails to show that the Veteran demonstrated effusion into the joint. Although the examiner documented "slight swelling," this finding is insufficient to indicate that the Veteran experienced effusion. Review of the June 2009 examination report reveals that it is sufficiently detailed, and thus, the Board finds that if effusion was present upon examination, such a finding would have been noted. Additionally, to the extent that the documented slight swelling may be interpreted as a finding of effusion, the Board notes that the record is negative for evidence of frequent episodes of effusion during the relevant period. The Board finds, therefore, that an additional rating under Diagnostic Code 5258 is not warranted.

In addition, the Board finds that a separate rating is not warranted under Diagnostic Code 5259, which pertains to the symptomatic removal of semilunar cartilage. As acknowledged previously, separate ratings under different diagnostic codes are only permitted if, for example, those separate ratings are assigned based on manifestations of the Veteran's disability that are separate and apart from manifestations for which the Veteran has already been rated. See Esteban, 6 Vet. App. at 261. Here, the evidence shows that the Veteran underwent a partial meniscectomy in 1984 and his disability has been productive of painful motion and instability, which are manifestations of his disability for which he is currently being compensated. As noted, the Veteran already has a 30 percent rating for instability (under Diagnostic Code 5257), which is the maximum possible rating for that symptom, and a separate rating of 10 percent for arthritis and painful motion (under Diagnostic Code 5003) for the period on appeal. Thus, the Board finds that the assignment of an additional rating for his symptomatic meniscectomy would constitute pyramiding and a separate rating under Diagnostic Code 5259 is not warranted. See 38 C.F.R. § 4.14.

As noted previously, the Veteran has the maximum possible rating for instability during this period and further consideration of the assignment of a rating under Diagnostic Code 5257 is not necessary. In addition, the evidence shows that the Veteran had full range motion during the relevant period. Specifically, he demonstrated flexion to 105 degrees and extension to 0 degrees, and thus, an increased rating for limitation of motion is not warranted under the schedular criteria. See 38 C.F.R. § 4.71a, Diagnostic Codes 5260 and 5261.

Additionally, the Board finds that because the Veteran has had a compensable rating for his disability for the entire period on appeal prior to June 16, 2010, he has been compensated appropriately for any reported painful motion and an additional rating is neither warranted under 38 C.F.R. § 4.59, nor is it permitted under 38 C.F.R. § 4.14.

The evidence fails to show that the following diagnostic codes are applicable in the present case: 5256 (ankylosis of the knee); 5262 (impairment of tibia and fibula); and 5263 (genu recurvatum).

Based on the foregoing, the Board finds that the preponderance of the evidence is against the assignment of an increased rating for the period on appeal prior to June 16, 2010. There is no doubt to be resolved in this case, as the preponderance of the evidence is against any higher ratings. 38 U.S.C.A. § 5107(b); 38 C.F.R. §§ 3.102, 4.3; Gilbert v. Derwinski, 1 Vet. App. 49 (1990).


ORDER

For the period on appeal up to June 16, 2010, a disability rating in excess of 30 percent for DJD of the left knee is denied.


REMAND

As acknowledged previously, the issues of the Veteran's entitlement to a rating in excess of 30 percent for DJD of the left knee for the period on appeal from September 1, 2011 and his entitlement to a TDIU remain before the Board.

Generally, VA is required to assist the Veteran in obtaining evidence necessary to support his claim and afford an examination to assess the current nature, extent, and severity of a service-connected disability when there is evidence that the Veteran's level of disability worsened since the last examination in June 2009. See 38 U.S.C.A. § 5103A; 38 C.F.R. § 3.159(c)(2); Palczewski v. Nicholson, 21 Vet. App. 174, 181 (2007); Snuffer v. Gober, 10 Vet. App. 400, 403 (1997). Thus, because the JMR indicates that the most recent VA examination of record does not accurately reflect the current severity of the Veteran's left knee disability, the Board finds that an examination must be provided on remand.

As acknowledged previously, the Veteran has asserted his entitlement to a TDIU. Thus, VA must obtain an opinion concerning whether his service-connected disabilities prevent him from securing or following a substantially gainful occupation and consider whether this issue should be referred to the Under Secretary for Benefits or the Director of the Compensation Service. See 38 C.F.R. § 3.321(b)(1), Rice v. Shinseki, 22 Vet. App. 447, 452 (2009). 

Accordingly, the case is REMANDED for the following actions:

1. Send the Veteran and his representative a letter that provides notice as to what evidence is necessary to substantiate a TDIU and VA's and the Veteran's responsibilities to provide evidence. The Veteran should be provided an appropriate amount of time to respond to this notification, which should be associated with the claims folder.

2. Notify the Veteran that he may submit statements from himself and others who have first-hand knowledge as to the impact that his service-connected disabilities have had on his ability to work.

3. Associate with the claims folder, physically or electronically, all records of the Veteran's recent and pertinent VA treatment. If no records are available, the claims folder must indicate this fact. Any additional records identified by the Veteran during the course of the remand should also be obtained, following the receipt of any necessary authorizations from the Veteran, and associated with the claims file.

4. After the above development has been completed, schedule the Veteran for an examination to determine the nature, extent, and severity of his left knee disability. The examiner should also address the impact of the left knee on the Veteran's daily life and ability to maintain employment. The claims file should be made available to and reviewed by the examiner, and all indicated tests and studies should be conducted. The examiner should set forth a complete rationale for all findings and conclusions.

 (a) Determine the range of motion of the left knee, in degrees.

 (b) Determine whether there is weakened movement, excess fatigability, or incoordination. If so, indicate whether it results in loss of range of motion and note the degree of additional range of motion loss.

 (c) Offer an opinion as to whether any associated pain could significantly limit functional ability during flare-ups or during periods of repeated use, noting the degree of additional range of motion loss due to pain on use or during flare-ups.

 (d) Indicate whether there is any evidence of favorable or unfavorable ankylosis, impairment of the tibia and fibula, or genu recurvatum.
 
5. Then, obtain an opinion regarding whether the Veteran's service-connected disabilities have affected his ability to work by assessing his occupational impairment, if any.

Specifically, the examiner is asked to comment as to whether it is at least as likely as not that the Veteran is unable to secure or follow a substantially gainful occupation as a result of his service-connected disabilities, either alone or in the aggregate. In doing so, the examiner is asked to take the Veteran's level of education, special training, and previous work experience into consideration, but disregard the Veteran's age or any impairment caused by nonservice-connected disabilities.

6. Thereafter, consider whether to forward the case to the Under Secretary for Benefits or the Director of the Compensation Service for consideration of the assignment of a TDIU and/or an extraschedular rating for the period on appeal before June 16, 2010 and the period from September 1, 2011.

7. After ensuring that the requested development is completed and the examination is adequate, readjudicate the issues on appeal. If any benefits sought are not granted, provide the Veteran and her representative with a supplemental statement of the case and allow an appropriate opportunity to respond thereto.

The Veteran has the right to submit additional evidence and argument on the matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

These claims must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).



____________________________________________
S. HENEKS
Acting Veterans Law Judge, Board of Veterans' Appeals




Department of Veterans Affairs