Citation Nr: 1755109 
Decision Date: 11/30/17 Archive Date: 12/07/17

DOCKET NO. 11-28 606 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in St. Petersburg, Florida


THE ISSUES

1. Entitlement to service connection for a cervical spine disorder. 

2. Entitlement to an increased initial evaluation for fibromyalgia, currently rated as 20 percent disabling. 

3. Entitlement to a total disability rating based on individual unemployability due to service-connected disability (TDIU).


REPRESENTATION

Veteran represented by: The American Legion


WITNESSES AT HEARING ON APPEAL

The Veteran and his wife

ATTORNEY FOR THE BOARD

M. Bilstein, Associate Counsel


INTRODUCTION

The Veteran served on active duty from December 1985 to March 1992. He was awarded the National Defense Service Medal, Southwest Asia Service Medal with two Bronze Service Stars, Kuwait Liberation Medal, Combat Infantryman Badge, and Parachutist Badge.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from November 2009 and October 2012 rating decisions of the Department of Veterans Affairs (VA) Regional Office (RO).

In July 2016, the Board remanded the current issues for further evidentiary development. The Board finds that there has been substantial compliance with the prior remand instructions and that no further action is necessary. See D'Aries v. Peake, 22 Vet. App. 97 (2008) (holding that only substantial, and not strict, compliance with the terms of a Board remand is required pursuant to Stegall v. West, 11 Vet. App. 268 (1998)).

In October 2016, the Veteran testified at a videoconference hearing before the undersigned Veterans Law Judge (VLJ). A transcript of that hearing is of record.

The issues of entitlement to an increased initial evaluation for fibromyalgia and entitlement to a TDIU are addressed in the REMAND portion of the decision below and are REMANDED to the Agency of Original Jurisdiction (AOJ).



VETERAN'S CONTENTIONS

The Veteran asserts that service connection for a cervical spine disorder is warranted as a result of his duties as a paratrooper in service (including completing approximately 30 to 40 jumps). He reported that he landed on his back and neck several times. He contends that he had problems with his neck in service and that these problems have continued since. See January 2009 Statement in Support of Claim, August 2010 Notice of Disagreement, October 2011 VA Form 9, and October 2016 Board Hearing Transcript at 4-12; see also May 2009 Statements in Support of Claim.


FACTUAL FINDINGS

1. Service personnel records document that the Veteran performed airborne training and earned a Parachutist Badge. 

2. Service treatment records show that the Veteran complained of neck and left shoulder pain and tenderness at visits from October 1987 to November 1987 and was diagnosed with a muscle strain of the cervical and bilateral shoulder area. At his February 1992 ETS examination, the Veteran reported bilateral paravertebral tenderness. 

3. Danville Chiropractic Center treatment records from December 1995 to November 2002 show that the Veteran continued to manifest associated symptoms of pain in the cervical spine and shoulder region. He also exhibited symptoms of stiffness, tightness, tenderness, restricted range of motion, and muscle spasms. 

4. Post-service private treatment records since 2005 also document associated symptoms of pain in the cervical spine and bilateral shoulder region, including an October 2005 complaint of right shoulder pain and a July 2007 complaint of persistent neck pain radiating down into the left shoulder with additional symptoms of burning, numbness, and decreased strength. A July 2007 MRI of the cervical spine revealed degenerative disc disease with shallow spondylosis and/or mixed spondylotic disc protrusions. A March 2008 MRI of the cervical spine showed shallow broad-based right posterolateral disc protrusion at C5-6, small central disc protrusion at C3-4, and mild degenerative uncovertebral disease. The Veteran underwent epidural steroid injections in November 2008 and December 2008 for cervical radiculopathy, cervical disc protrusion, and cervicalgia. A March 2009 operative note shows that the Veteran underwent an anterior cervical discectomy, arthrodesis, and anterior cervical plating for his cervical spondylosis. The Veteran has continued to receive treatment for his neck pain from September 2008 to October 2016. 

5. The Veteran, his family, and his friends have provided competent and credible lay statements indicating an onset of neck and upper extremity symptoms in service and recurring since.

6. At a February 2010 VA spine examination, the Veteran reported that physical therapy, injections, and surgery did not alleviate his cervical pain, which he attributes to repeated rough parachuting during service. The examiner diagnosed the Veteran with degenerative disc disease of the cervical spine, cervical spine spondylosis, and levocurvature of the cervical spine. 

7. An addendum February 2010 VA opinion also reflected a diagnosis of cervical degenerative disc disease with minimal spondylosis. 


LEGAL CONCLUSION

The criteria for service connection for a cervical spine disorder are met. 38 U.S.C. §§ 1110, 1131, 5107 (2012); 38 C.F.R. §§ 3.102, 3.303(b), 3.309(a) (2017).


REASONS AND BASES FOR FINDINGS AND CONCLUSION

As an initial matter, the Board notes that post-service treatment records show the Veteran has been diagnosed during the course of the appeal with various cervical spine conditions, including cervical degenerative disc disease, cervical spondylosis, and cervical disc protrusions. Initially, there is no dispute as to the existence of a current cervical spine disorder, nor is there any real dispute as to in-service incurrence. The outcome of the case, therefore, turns on whether a cervical spine disorder is related to service.

Service connection for a recognized chronic disease can be established through continuity of symptomatology. Walker v. Shinseki, 708 F.3d 1331 (2013); 38 C.F.R. §§ 3.303(b), 3.309. For chronic diseases shown as such in service or within the applicable presumptive period, subsequent manifestations of the same chronic disease at any later date are service-connected unless attributable to an intercurrent cause. 38 C.F.R. § 3.303(b). For a chronic disease to be considered to have been "shown in service," there must be a combination of manifestations sufficient to identify the disease entity, and sufficient observation to establish chronicity at the time, as distinguished from merely isolated findings. Id. When the condition noted in service or within the presumptive period is not a chronic disease, a showing of continuity of symptomatology after discharge is required. Id. Degenerative disc disease of the cervical spine is a chronic disease for VA purposes. 38 C.F.R. § 3.309(a).

At the outset, service treatment records reflect complaints of tenderness and pain with diagnoses of muscle strain of the cervical spine and shoulder region. Service personnel records also corroborate the Veteran's service duties as a paratrooper. 

Post-service treatment records dating back as early as 1995 show the Veteran exhibited a continuity of symptomology, including pain, tenderness, restricted range of motion, and decreased strength, and ultimately underwent a March 2009 cervical discectomy due to cervical degenerative disc disease and spondylosis. 

The Veteran is competent to report on his observed symptoms and on the circumstances of his injuries during and after service. At the hearing, the Veteran consistently and credibly testified that he has experienced pain since service and further described the chronic nature of his symptoms. Post service treatment records up to and after the cervical discectomy corroborate and document the chronic nature of symptoms as testified to at the hearing. Accordingly, the Board finds that the Veteran's reports of in-service injuries due to parachute jumps and neck and shoulder symptoms thereafter both competent and credible. See Owens v. Brown, 7 Vet. App. 429 (1995); Elkins v. Gober, 229 F.3d 1369 (Fed. Cir. 2000); Madden v. Gober, 125 F.3d 1477 (Fed. Cir. 1997); Guimond v. Brown, 6 Vet. App. 69 (1993); Hensley v. Brown, 5 Vet. App. 155 (1993); Caluza v. Brown, 7 Vet. App. 498 (1995); Wood v. Derwinski, 1 Vet. App. 190 (1991).

The Board has considered the February 2010 VA medical opinions which concluded that no current cervical spine disability was related to service. The examiner opined that the Veteran's degenerative disc disease was not caused by or a result of parachute jumping in service as the Veteran's service treatment records were silent for cervical spine disease and only documented treatment for muscle strain. The examiner further reasoned that the diagnosis of cervical spine disease was made well after service and that July/August 2009 AMA Guideline show that degenerative disc disease, spondylosis, and levocurvature of the cervical spine as a result of cumulative trauma is "a myth" with this accounting for three percent or less of conditions. An addendum VA opinion also rendered in February 2010 also stated that age, familial aggregation, and intrinsic disc loading were the predominant predictors of degenerative disc disease. This examiner also opined that the preponderance of the medical evidence does not support parachute activities as a remote cause of degenerative disc disease. However, as the VA examiners did not consider all of the Veteran's history or complaints and his reports of symptom onset during and shortly after service, as corroborated by chiropractic records since December 1995, their negative opinions are therefore accorded no probative weight. See Dalton v. Nicholson, 21 Vet. App. 23 (2007) (holding that an examination was inadequate where the examiner did not comment on the Veteran's report of in-service injury and instead relied on the absence of service medical records to provide a negative opinion).

The Board accordingly finds that the evidence of record for and against the claim is at least in relative equipoise. Resolving doubt in favor of the Veteran, the claim of entitlement to service connection for a cervical spine disorder is granted. 38 U.S.C. 
§§ 1110, 5107 (2012); see generally Gilbert v. Derwinski, 1 Vet. App. 49 (1990); Ortiz v. Principi, 274 F.3d 1361 (Fed. Cir. 2001).


ORDER

Service connection for a cervical spine disorder is granted. 


REMAND

Although further delay is regrettable, the Board finds that additional development is required before the Veteran's following claims may be decided.

Regarding the claim for an initial evaluation in excess of 20 percent for fibromyalgia, the Veteran's statements at the October 2016 Board hearing, as well as his statements during physical therapy in August 2016, suggest the severity of his disability may not be adequately demonstrated in the evidence currently of record. Accordingly, the Veteran should be afforded a new VA examination to assess the current nature, extent, and severity of his fibromyalgia. See Palczewski v. Nicholson, 21 Vet. App. 174, 181-82 (2007); Snuffer v. Gober, 10 Vet. App. 400, 403 (1997).

Finally, the Board notes that the increased rating claim currently on appeal is part and parcel of the claim for a TDIU, and as such these claims are inextricably intertwined. Accordingly, the issue of entitlement to a TDIU must be held in abeyance pending adjudication of the other claim currently on appeal. See Harris v. Derwinski, 1 Vet. App. 180, 183 (1991) (holding that two issues are inextricably intertwined when they are so closely tied together that a final Board decision on one issue cannot be rendered until the other issue has been considered).

Updated VA treatment records and private treatment records should also be requested on remand. 38 U.S.C. § 5103A(c) (2012); see also Bell v. Derwinski, 2 Vet. App. 611 (1992) (VA medical records are in constructive possession of the agency, and must be obtained if the material could be determinative of the claim).

Accordingly, the case is REMANDED for the following action:

1. Ask the Veteran to provide the names and addresses of any medical provider, VA or private, who has treated him for fibromyalgia. After securing any necessary releases, the AOJ should request any relevant records identified that are not duplicates of those already contained in the claims file. Additionally, obtain VA treatment records from October 2016 to the present. If any requested records are unavailable, the claims file should be annotated as such and the Veteran and his representative notified of such.

2. After completing the above actions and associating any additional records with the claims file, schedule the Veteran for an examination with an appropriate clinician, if possible a rheumatologist, to determine the current severity of his service-connected fibromyalgia. 

The examiner should also provide an opinion as to the functional limitations the Veteran has experienced as a result of his service-connected fibromyalgia, and what impact, if any, those have on his occupational functioning.

2. After completing the requested actions, and any additional action deemed warranted, the AOJ should readjudicate the claims on appeal, including entitlement to a TDIU. If the benefits sought on appeal remain denied, the Veteran and her representative should be furnished a supplemental statement of the case and given the opportunity to respond thereto. The case should then be returned to the Board for further appellate consideration, if in order.

The Veteran has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C. §§ 5109B, 7112 (2012).



______________________________________________
S.C. KREMBS
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs