Citation Nr: 1602619 
Decision Date: 01/28/16 Archive Date: 02/05/16

DOCKET NO. 12-10 117 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Albuquerque, New Mexico


THE ISSUES

1. Entitlement to an initial disability rating in excess of 10 percent for the service-connected rectal prolapse.

2. Entitlement to an initial disability rating in excess of 10 percent for the service-connected gastroesophageal reflux disease (GERD). 


REPRESENTATION

Appellant represented by: Disabled American Veterans


ATTORNEY FOR THE BOARD

L. B. Cryan, Counsel



INTRODUCTION

The Veteran served on active duty from December 1999 to January 2010.

This case is before the Board of Veterans' Appeals (Board) on appeal from a September 2010 rating decision by the Department of Veterans Affairs (VA) Regional Office (RO) in Albuquerque, New Mexico. In that rating decision, the RO, in pertinent part, granted service connection for rectal prolapse and GERD, and assigned initial 10 percent ratings for each of those disabilities, effective from January 28, 2010. The Veteran disagreed with the initial 10 percent ratings assigned for the rectal prolapse and GERD, and this appeal ensued. 

This appeal was processed using the Virtual Benefits Management System (VBMS) paperless claims processing system. Accordingly, any future consideration of this Veteran's case should take into consideration the existence of this electronic record.


FINDINGS OF FACT

1. The Veteran's prolapsed rectum has been no more than mild with constant slight or occasional moderate fecal leakage since the effective date of service connection.

2. Since the effective date of service connection, the Veteran's GERD has been manifested by persistently recurring heartburn, and regurgitation that is controlled on medication; it is not manifested by substernal arm or shoulder pain, and it has never been productive of considerable overall health impairment. 


CONCLUSIONS OF LAW

1. The criteria for the assignment of an initial disability rating in excess of 10 percent for the service-connected prolapsed rectum have not been met. 38 U.S.C.A. § 1155 (West 2014); 38 C.F.R. § 4.114, Diagnostic Code 7334 (2015).

2. The criteria for the assignment of an initial disability rating in excess of 10 percent for the service-connected GERD have not been met. 38 U.S.C.A. § 1155 (West 2014); 38 C.F.R. § §4.1, 4.6, 4.20, 4.114, Diagnostic Code 7346 (2015).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Duties to Notify and Assist

VA has a duty to provide notification to the Veteran with respect to establishing entitlement to benefits, and a duty to assist with development of evidence under 38 U.S.C.A. §§ 5103, 5103A; 38 C.F.R. § 3.159(b).

The Veteran's claim arises from a disagreement with the initial disability ratings that was assigned following the grants of service connection for rectal prolapse and GERD. Once service connection is granted the claim is substantiated, additional notice is not required, and any defect in the notice is not prejudicial. Hartman v. Nicholson, 483 F.3d 1311 (Fed. Cir. 2007); Dunlap v. Nicholson, 21 Vet. App. 112 (2007).

VA also has a duty to assist the Veteran in the development of the claim. This duty includes assisting the Veteran in the procurement of service treatment records and pertinent treatment records and providing an examination when necessary. 38 U.S.C.A. § 5103A; 38 C.F.R. § 3.159. The Board finds that all relevant facts have been properly developed, and that all available evidence necessary for equitable resolution of the issue has been obtained. The Veteran's service and post-service treatment records, VA examination reports, and lay statements have been obtained.

VA has associated with the record the Veteran's VA outpatient treatment, dated since discharge from service in 2010. He was also afforded VA examinations in March 2010, October 2010, April 2014, and August 2015 which are adequate because the examiners discussed his medical history, described his disabilities and associated symptoms in detail, and supported all conclusions with analyses based on objective testing and observations. Stefl v. Nicholson, 21 Vet. App. 120, 124 (2007). The Veteran has not reported that his GERD or rectal prolapse has worsened since the date of the last examination. A remand is thus not required solely due to the passage of time. See Palczewski v. Nicholson, 21 Vet. App. 174, 182-83 (2007); VAOPGCPREC 11-95 (1995), 60 Fed. Reg. 43186 (1995). 

In this case the Veteran is currently employed and has not reported he is unemployable due to his service-connected rectal prolapse or GERD, and the record does not otherwise reasonably raise the issue of the Veteran being unable to engage in substantially gainful employment due to his service-connected disabilities. Thus, this appeal does not raise the issue of entitlement to a total disability rating based on individual unemployability (TDIU). See 38 C.F.R. §§ 3.340, 4.16 (2014); Rice v. Shinseki, 22 Vet. App. 447, 453 (2009).

Finally, additional evidence was added to the record following issuance of the most recent Supplemental Statement of the Case (SSOC) in August 2014; however, in a December 2015 statement, the Veteran's representative waived initial review by the Agency of Original Jurisdiction of all of the evidence added to the record since the August 2014 SSOC. The Board may therefore proceed without prejudice. 


II. Increased Ratings

Disability ratings are determined by applying the criteria set forth in the VA Schedule for Rating Disabilities, found in 38 C.F.R., Part 4. The percentage ratings are based on the average impairment of earning capacity as a result of a service-connected disability, and separate diagnostic codes identify the various disabilities and the criteria for specific ratings. 38 U.S.C.A. § 1155; 38 C.F.R. § 4.1. 

If two disability evaluations are potentially applicable, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria for that rating; otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7. All reasonable doubt as to the degree of disability will be resolved in favor of the claimant. 38 U.S.C.A. § 5107(b); 38 C.F.R. § 4.3. 

Staged ratings must be considered, which are appropriate when the evidence establishes that the claimed disability manifested symptoms that would warrant different ratings for distinct time periods during the appeal. Hart v. Mansfield, 21 Vet. App. 505, 509-10 (2007). See also Fenderson v. West, 12 Vet. App. 119, 126 (1999) (applying this concept to initial ratings). 

It is the Board's responsibility to determine whether a preponderance of the evidence supports the claim or whether the evidence is in relative equipoise, with the veteran prevailing in either event, or whether there is a preponderance of evidence against the claim, in which case the claim must be denied. See Gilbert v. Derwinski, 1 Vet. App. 49 (1990). 

The Board will consider not only the criteria of the currently assigned diagnostic codes, but also the criteria of other potentially applicable diagnostic codes.

Rectal Prolapse

The Veteran's service-connected rectal prolapse has been assigned a 10 percent evaluation under 38 C.F.R. § 4.114, Diagnostic Code 7334. Under this Diagnostic Code a 10 percent rating is warranted for mild prolapse of the rectum with constant slight or occasional moderate leakage. A 30 percent evaluation is warranted for a moderate rectal prolapse that is persistent or frequently recurring. A 50 percent evaluation is warranted for severe (or complete), persistent prolapse.

The Veteran's service treatment records show that the Veteran underwent a rectopexy to repair an in-service rectal prolapse in 2007. The Veteran reported at a March 2010 VA examination that the rectopexy repair helped for a while but then he had a partial prolapse again. He reported rectal pain and stool leakage. The examiner noted that the Veteran's fecal leakage was mild, recurred 2-3 times per week, and did not require the use of pads.

At VA examination in October 2010, the Veteran reported that he had a continuous sense of fecal urgency, but fecal leakage was reported as mild and occasional. The Veteran did not have hemorrhoids. On examination, the Veteran had decreased anal sphincter tone and weak voluntary control of the anal sphincter. 

An April 2014 VA examination report notes recurrence of prolapse with exertion or cough only, but it regressed spontaneously. The Veteran declined a rectal examination. He reported that he has had a few accidents at work when coughing.

At an August 2015 VA examination, the Veteran's rectal prolapse was described as being manifested by occasional slight leakage for which he does not wear a pad. The Veteran reported that he thought his prolapse was more frequent since his prior examination in 2014, noting that he had a little bit of staining on his underwear about once a week from rectal leakage. External visualization of the anal area was normal. When the Veteran coughed, a slight bulge of pink tissue appeared which, the examiner found was likely a sign of impending rectal prolapse versus hemorrhoids, given his past history. Regarding occupational impairment, the Veteran reported that he has had to leave work approximately twice during the prior six months due to what he described as "significant leakage." 

In summary, the Veteran's rectal prolapse has been manifested by constant slight or occasional moderate fecal leakage since the effective date of service connection. This manifestation, according to the rating schedule, is described as a mild prolapse. A mild prolapse warrants the assignment of a 10 percent rating. 

To warrant the next higher, 30 percent evaluation, the rectal prolapse would have to more nearly approximate a moderate overall disability picture, with persistent or frequently recurring prolapse. According to the VA examiner in April 2014, the Veteran had recurrence of prolapse with exertion or cough only; and, indicated that it regressed spontaneously. Likewise, the examiner in August 2015 noted that a slight bulge of pink tissue appeared during coughing, but specifically found this to be a sign of "impending rectal prolapse." In other words, the examiner found that the Veteran did not have an actual prolapsed rectum at the time of the examination in August 2015 because any impending prolapse due to cough resolved spontaneously. Furthermore, the examiner noted the Veteran's reports of "significant" leakage at work two times in a 6 month period, but specifically indicated that the Veteran's leakage was slight and did not require the use of a pad. 

Even if the Board finds, based on the Veteran's statements, that he has occasional moderate leakage, there is no indication that such incidents are persistently recurring. Thus, the criteria for the next higher, 30 percent rating are not more nearly approximated. 

The Board is mindful of the Veteran's report in August 2015 that he thought his prolapse was getting worse; however, his rectal leakage at that time was not reported to be more than constant slight leakage (underwear stains) or occasionally moderate. Moreover, the Veteran's condition has not necessitated the use of a pad at any time since service. 

Based on the foregoing findings, the Veteran is not entitled to a higher evaluation for his prolapsed rectum at any point during the appeal period under Diagnostic Code 7334. 

The Board has also considered weather a separate, or higher, rating can be assigned pursuant to another diagnostic code. According to the examiner in October 2010, the Veteran had decreased anal sphincter tone and weak voluntary control of anal sphincter. 38 C.F.R. § 4.114, Diagnostic Code 7332, provides ratings for impairment of sphincter control. Diagnostic Code 7332 provides a noncompensable rating for healed rectum and anus or slight impairment of sphincter control without leakage. A 10 percent rating is assigned for constant slight impairment of sphincter control or occasional moderate leakage. A 30 percent rating is assigned for occasional involuntary bowel movements or impairment of sphincter control necessitating the wearing of a pad. A 60 percent evaluation is warranted for extensive leakage and fairly frequent involuntary bowel movements. A 100 percent rating is warranted if there is complete loss of sphincter control. 38 C.F.R. § 4.114, Diagnostic Code 7332. 

As the Veteran does not have involuntary bowel movements or require the use of a pad for impairment of sphincter control, the assignment of a 30 percent rating under Diagnostic Code 7332 are not met. Notably, the criteria for the assignment of a 10 percent rating under Diagnostic Code 7332 are nearly identical to the criteria for the assignment of a 10 percent rating under Diagnostic Code 7334, and the Veteran's symptoms fit squarely under this criteria. However, a separate 10 percent rating for impairment of sphincter control may not be assigned in this case because it would violate the rule against pyramiding. 

The evaluation of the same disability under several diagnostic codes, known as pyramiding, must be avoided; however, separate ratings may be assigned for distinct disabilities resulting from the same injury so long as the symptomatology for one condition is not duplicative of or overlapping with the symptomatology of the other. Esteban v. Brown, 6 Vet. App. 259, 262 (1994); 38 C.F.R. § 4.14. In this case, the symptoms associated with the criteria for a 10 percent rating under Diagnostic Code 7334 are nearly identical to the criteria for a 10 percent rating under Diagnostic Code 7332. Thus, to award two separate ratings would essentially be compensating the Veteran twice for his fecal leakage, which, according to 38 C.F.R. § 4.14, is to be avoided. 

In light of the foregoing, the criteria for the assignment of an initial rating in excess of 10 percent for the service-connected rectal prolapse have not been met at any time since service. 

The Board has considered whether the benefit of the doubt rule applies to the present appeal. 38 U.S.C.A. § 5107(b) (West 2014); Gilbert v. Derwinski, 1 Vet. App. 49, 55 (1990). However, a preponderance of the evidence is against a higher evaluation; thus, this rule does not apply and the claim for an increased evaluation must be denied.

GERD

The Veteran's service-connected gastroesophageal reflux disease (GERD) is rated as 10 percent disabling since the effective date of service connection, under Diagnostic Code 7346 as analogous to hiatal hernia. See 38 C.F.R. § 4.114, Diagnostic Code 7346 (2015). 

GERD is not listed specifically in the Rating Schedule, and the most analogous diagnostic code for the Veteran's GERD is Diagnostic Code 7346 (hiatal hernia). 38 C.F.R. § 4.20 (providing for rating by analogy). In this regard, there are no other potentially applicable diagnostic codes that would more appropriately contemplate the Veteran's GERD symptoms. 

Pursuant to Diagnostic Code 7346, a 10 percent disability rating is warranted with two or more of the symptoms for a 30 percent disability rating with less severity. Id. A 30 percent disability rating is warranted for persistently recurrent epigastric distress with dysphagia, pyrosis, and regurgitation, accompanied by substernal or arm or shoulder pain, productive of considerable impairment of health. Id. A maximum schedular 60 percent disability rating is warranted for symptoms of pain, vomiting, material weight loss, and hematemesis or melena with moderate anemia; or other symptom combinations productive of severe impairment of health. Id. 

The evidence of record shows that, since the effective date of service connection, the Veteran's GERD has been manifested by heartburn and regurgitation. Although the heartburn and regurgitation has reportedly been consistent and persistent throughout the appeal period, the GERD is shown to be controlled on medication. 

At the time of a March 2010 VA examination, the Veteran reported that his GERD was getting progressively worse. It was manifested by heartburn, chest pain, and regurgitation. He was taking Nexium at that time, as well as over the counter antacids as needed. He reported that the GERD symptoms interfered with his sleep, which affected his concentration. 

At a VA examination in April 2014, the Veteran reported that his GERD symptoms were persistent and continuous even with medication. At the time of that examination, the Veteran was taking prescription pantoprazole each evening. The examiner noted that the Veteran reported persistently recurrent epigastric distress, pyrosis, reflux, sleep disturbance and some vomiting. However, the examiner also noted that the outpatient treatment records were not consistent with the Veteran's reported symptoms because chart notes from April 1, 2014 state that the Veteran's GERD symptoms are gone with the medication. 

In addition to the April 1, 2014 notation in the record, the other outpatient treatment records dating from 2010 through 2015 show that the Veteran did not seek treatment for the condition, and his medication dosage has remained the same (40 mg daily) since he was first prescribed pantoprazole. 

Moreover, a September 2010 VA primary care evaluation note also indicates that the Veteran's symptoms were controlled with esomeprazole (Nexium) medication at that time. Despite that finding, the doctor switched his medication to pantoprazole 40 mg. As of October 2015, the dose was still 40 mg. See CAPRI records from September 2010 through October 2015. 

In summary, the evidence of record shows that the Veteran's medication has controlled his GERD since the effective date of service connection. At the time of the March 2010 examination, the Veteran was taking Nexium, which, in September 2010, was noted to be controlling his symptoms. Likewise, in April 2014, the Veteran was taking pantoprazole (Protonix) for his GERD, which also controlled his symptoms as noted in the outpatient treatment records. 

The VA examination reports note persistent epigastric distress with heartburn (pyrosis) and regurgitation, with occasional vomiting, and sleep disturbance. The assignment of the 10 percent rating since the effective date of service connection reflects the Veteran's symptoms of persistently recurrent epigastric distress with pyrosis, regurgitation, and occasional vomiting. To warrant the next higher, 30 percent rating, the Veteran's symptoms would have to more severe and be accompanied by substernal arm or shoulder pain with considerable impairment of health. Here, the Veteran's VA examination reports and treatment records do not reflect substernal arm or shoulder pain, and they do not reflect considerable impairment of health due to GERD symptoms. 

Although the Veteran reported to the examiners in March 2010 and April 2014 that his symptoms were progressively worsening, this assertion is contradictory to the findings from the outpatient treatment records as noted above. Moreover, the outpatient treatment records show that the dose of the Veteran's GERD medication has remained stable throughout the course of the appeal, and the Veteran has not sought treatment for worsening symptoms, and he has not reported to the prescribing physicians that his GERD medication is not working to control his symptoms. See Kahana v. Shinseki, 24 Vet. App. 428, 440 (2011) ("[T]he Board may use silence in the [service medical records] as contradictory evidence only if the alleged injury, disease, or related symptoms would ordinarily have been recorded in the [service medical records].") citing to Fed.R.Evid. 803 (7) (the absence of an entry in a record may be evidence against the existence of a fact if such a fact would ordinarily be recorded). As it pertains to the case at hand, the Board finds that if the Veteran's GERD symptoms were getting progressively worse, such would be recorded in the outpatient treatment records because here, just the opposite was noted; that is, the Veteran's GERD symptoms were controlled on medication. In other words, given that the Veteran's GERD symptoms were shown to be controlled on medication, it would seem likely that the opposite would be recorded if the Veteran's GERD symptoms were uncontrolled and getting worse. 

Moreover, no VA examination report or outpatient treatment record suggests that the Veteran's GERD symptoms have been shown to be productive of substernal arm or shoulder pain, or considerable impairment of health. 

In this case, the Veteran is competent to testify on factual matters of which he has first-hand knowledge. Washington v. Nicholson, 19 Vet. App. 362 (2005). The Veteran is competent to provide evidence of observable symptoms, including pain. Jandreau v. Nicholson, 492 F.3d 1372, 1376-77 (Fed. Cir. 2007). See also Layno v. Brown, 6 Vet. App. 465, 469-71 (1994). Competency, however, differs from credibility. In this case, the Veteran's statements lack credibility, as those provided to VA examiners are internally inconsistent with other statements provided in the context of actual treatment in the record. Therefore, the lay statements lack probative value. 

In light of the foregoing, the Board finds more probative the findings in the outpatient treatment records regarding the Veteran's GERD symptoms. These records show that while continuous medication is required for control of symptoms, there has neither been a change to the dosage of medication due to increased symptoms, nor has the Veteran reported to the physician who prescribes such medication that his symptoms were not controlled on 40 mg. of Nexium or 40 mg. of Protonix at any time since service. These findings, when weighed against the Veteran's inconsistent reports to the VA examiners that his symptoms were progressively worsening, carry greater weight. The VA examiner in April 2014 recorded the Veteran's assertions on the examination report, but also noted the inconsistency in the outpatient treatment records. 

Moreover, as the examination reports do not reflect considerable impairment of health with substernal arm or shoulder pain, the criteria for a 30 percent rating are not met or more nearly approximated. 

Furthermore, while the Veteran has reported occasional vomiting, which is one symptoms associated with the assignment of a 60 percent rating, the Veteran's other symptoms do not combine to produce severe impairment of health, and the Veteran does not have anemia or material weight loss. Likewise, the evidence does not show signs of gastrointestinal bleeding manifested by hematemesis or melena. 

In light of the foregoing, the criteria for the assignment of an initial rating in excess of 10 percent for the service-connected GERD are not met at any time since the effective date of service connection. 

The Board has considered whether the benefit of the doubt rule applies to the present appeal. 38 U.S.C.A. § 5107(b) (West 2014); Gilbert v. Derwinski, 1 Vet. App. 49, 55 (1990). However, a preponderance of the evidence is against a higher evaluation; thus, this rule does not apply and the claim for an increased evaluation must be denied.

III. Extra-Schedular Consideration

Finally, a Veteran may be awarded an extraschedular rating in an exceptional circumstance. 38 C.F.R. § 3.321(b) (2013); see also, Johnson v. McDonald, 762 F.3d. 1362 (Fed. Cir. 2014). However, in this case, the assigned ratings contemplate the symptoms and functional impairment attributable to the GERD and rectal prolapse. Here, the Veteran's service-connected rectal prolapse is manifested by signs and symptoms such as fecal leakage due to impairment of sphincter control, and this is contemplated by the diagnostic criteria. 

Likewise, the service-connected GERD is manifested by signs and symptoms of epigastric distress, including heartburn and regurgitation and occasional vomiting, and these symptoms are contemplated by the diagnostic criteria. The Board is mindful that the VA examiner in April 2014 associated sleep disturbance with the GERD, and this is not a symptom contemplated by the diagnostic criteria. However, service connection has also been established for the Veteran's bipolar disorder, which is rated based on the General Formula for Mental Disorders at 38 C.F.R. § 4.130, and that criteria contemplate chronic sleep impairment. Chronic sleep impairment is listed as a symptoms associated with the assignment of a 30 percent rating for mental disorders. In this case, the Veteran's service-connected bipolar disorder was initially rated as 50 percent disabling, and then that rating was subsequently increased to 70 percent. As the Veteran's bipolar disorder has been rated higher than 30 percent for the entire period covered by this claim, the Veteran's sleep impairment is contemplated by the rating schedule, and to consider it on an extra-schedular basis would amount to pyramiding. Since there are no other symptoms reported that are not attributed to the service-connected disabilities, this is not an exceptional circumstance in which extraschedular consideration is required. 

Accordingly, the Board concludes that the schedular rating criteria reasonably describe the Veteran's disability picture. In short, there is nothing exceptional or unusual about the Veteran's disability because the rating criteria reasonably describe his disability level and symptomatology. 




 (CONTINUED ON NEXT PAGE)
ORDER

An initial disability rating in excess of 10 percent for the service-connected rectal prolapse is denied. 

An initial disability rating in excess of 10 percent for the service-connected GERD is denied. 



____________________________________________
BETHANY L. BUCK
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs