Citation Nr: 1817426 
Decision Date: 03/23/18 Archive Date: 04/03/18

DOCKET NO. 13-30 302 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in St. Petersburg, Florida


THE ISSUES

1. Whether new and material evidence has been received to reopen a claim for entitlement to service connection for bipolar disorder.

2. Entitlement to service connection for bipolar disorder.

3. Entitlement to a compensable evaluation for excision of ganglion cyst of the left wrist. 

4. Entitlement to a total disability evaluation based on individual unemployability due to service-connected disabilities (TDIU). 


REPRESENTATION

Veteran represented by: The American Legion



WITNESS AT HEARING ON APPEAL

Veteran


ATTORNEY FOR THE BOARD

Journet Shaw, Counsel


INTRODUCTION

The Veteran served on active duty in the U.S. Navy from December 1967 to October 1971. 

These matters come before the Board of Veterans' Appeals (Board) on appeal from rating decisions in August 2011 and April 2012 by the Department of Veterans Affairs (VA) Regional Office (RO) in St. Petersburg, Florida. 

In the August 2011 rating decision, the RO denied reopening the claim for service connection for bipolar disorder. The Veteran appealed the decision.

In the April 2012 rating decision, the RO denied a compensable evaluation for excision of ganglion cyst of the left wrist; and denied a TDIU. The Veteran appealed the decision. 

The Veteran testified before the undersigned Veterans Law Judge at an October 2017 Travel Board hearing. A transcript of this hearing is of record.

During the pendency of the appeal, the RO issued a December 2017 rating decision, which reopened the claim for service connection for bipolar disorder and denied the claim for service connection for bipolar disorder. Despite the RO's action, the Board must perform its own de novo review of whether new and material evidence has been received to reopen the claim of entitlement to service connection for bipolar disorder before addressing the claim on its merits. See 38 U.S.C. § 7104 (2012); see also Barnett v. Brown, 83 F.3d 1380 (Fed. Cir. 1996). 

In March 2016, the Veteran executed a new power-of- attorney (VA Form 21-22), designating the American Legion as his representative. The Board recognizes the change in representation.

The issues of entitlement to a compensable evaluation for excision of ganglion cyst of the left wrist and entitlement to a TDIU are addressed in the REMAND portion of the decision below and are REMANDED to the Agency of Original Jurisdiction (AOJ).


FINDINGS OF FACT

1. In a June 2010 rating decision, the RO denied the petition to reopen a claim for entitlement to service connection for bipolar disorder; the Veteran did not submit a NOD, no new and material evidence was submitted within one year of the decision, and the decision became final. 

2. The evidence received since the June 2010 rating decision is not cumulative or redundant of the evidence of record, does relate to an unestablished fact, and does raise a reasonable possibility of substantiating the Veteran's claim of entitlement to service connection for bipolar disorder. 

3. The preponderance of the evidence does not demonstrate that the Veteran's currently diagnosed bipolar disorder is etiologically related to his active duty service. 



CONCLUSIONS OF LAW

1. The June 2010 rating decision that denied the claim of entitlement to service connection for bipolar disorder is final. 38 U.S.C. § 7105 (2012); 38 C.F.R. §§ 20.302, 20.1103 (2017).

2. New and material evidence has been received to reopen the claim for entitlement to service connection for bipolar disorder. 38 U.S.C. § 5108 (2012); 38 C.F.R. § 3.156 (2017).

3. The criteria to establish entitlement to service connection for bipolar disorder have not been met. 38 U.S.C. §§ 1110, 5103, 5103A, 5107 (2012); 38 C.F.R. §§ 3.102, 3.159, 3.303 (2017).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Board has thoroughly reviewed all the evidence in the claims file, and has an obligation to provide an adequate statement of reasons or bases supporting its decision. See 38 U.S.C. § 7104 (2012); Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000). While the Board must review the entire record, it need not discuss each piece of evidence. Id. The analysis below focuses on the most salient and relevant evidence and on what this evidence shows, or fails to show, on the claim. It should not be assumed that the Board has overlooked pieces of evidence that are not explicitly discussed herein. See Timberlake v. Gober, 14 Vet. App. 122 (2000). The law requires only that the Board address its reasons for rejecting evidence favorable to the claimant. Id. 

The Board must assess the credibility and weight of all evidence, including the medical evidence, to determine its probative value, accounting for evidence which it finds to be persuasive or unpersuasive, and providing reasons for rejecting any evidence favorable to the claimant. Caluza v. Brown, 7 Vet. App. 498, 506 (1995). Equal weight is not accorded to each piece of evidence contained in the record, and every item of evidence does not have the same probative value. Gilbert v. Derwinski, 1 Vet. App. 49 (1990). When all the evidence is assembled, VA is responsible for determining whether the evidence supports the claim or is in relative equipoise, with the claimant prevailing in either event, or whether a preponderance of the evidence is against a claim, in which case, the claim is denied. Id. 

Duties to Notify and Assist

Pursuant to the Veterans Claims Assistance Act (VCAA), VA has duties to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C. §§ 5102, 5103, 5103A, 5107 (2012); 38 C.F.R. §§ 3.102, 3.156(a), 3.159 (2017).

In response to the Veteran's statement that he had undergone mental health treatment at VA facility in Fort Hamilton, New York two months after his discharge, the RO conducted a search for records from October 1971 to October 1973. In a July 2002 VA memorandum, the VA New York Harbor Healthcare System, which was identified as the correct facility for all medical treatment for Fort Hamilton, New York, revealed no available records for the requested period. The Veteran did not provide any copies of these records that he may have had in his possession. 

Neither the Veteran nor his representative has raised any issues with the duty to notify or duty to assist. See Scott v. McDonald, 789 F.3d 1375, 1381 (Fed. Cir. 2015) (holding that "the Board's obligation to read filings in a liberal manner does not require the Board . . . to search the record and address procedural arguments when the veteran fails to raise them before the Board."); Dickens v. McDonald, 814 F.3d 1359, 1361 (Fed. Cir. 2016) (applying Scott to a duty to assist argument).

New and Material Evidence

Rating actions are final and binding based on evidence on file at the time the claimant is notified of the decision and may not be revised on the same factual basis except by a duly constituted appellate authority. 38 C.F.R. § 3.104(a). The claimant has one year from notification of an RO decision to initiate an appeal by filing a notice of disagreement (NOD) with the decision, and the decision becomes final if an appeal is not perfected within the allowed time period. 38 U.S.C. § 7105(b) and (c) (2012); 38 C.F.R. §§ 3.160(d), 20.200, 20.201, 20.202, 20.302(a) (2017). 

If new and material evidence is presented or secured with respect to a claim which has been disallowed, the Secretary shall reopen the claim and review the former disposition of the claim. 

New evidence means existing evidence not previously submitted to agency decisionmakers. Material evidence means existing evidence that, by itself or when considered with previous evidence of record, relates to an unestablished fact necessary to substantiate the claim. New and material evidence can be neither cumulative nor redundant of the evidence of record at the time of the last prior final denial of the claim sought to be reopened, and must raise a reasonable possibility of substantiating the claim. 38 C.F.R. § 3.156(a).

The United States Court of Appeals for Veterans Claims (Court) has held that the determination of whether newly submitted evidence raises a reasonable possibility of substantiating the claim should be considered a component of the question of what is new and material evidence, rather than a separate determination to be made after the Board has found that evidence is new and material. See Shade v. Shinseki, 24 Vet. App. 110 (2010). The Court further held that new evidence would raise a reasonable possibility of substantiating the claim if, when considered with the old evidence, it would at least trigger the Secretary's duty to assist by providing a medical opinion. Id. 

For the purpose of establishing whether new and material evidence has been submitted, the credibility of the evidence is to be presumed. Justus v. Principi, 3 Vet. App. 510, 513 (1992).

The Veteran's original service connection claim for bipolar disorder was denied in a February 2000 rating decision, because the evidence did not show that the Veteran was treated for or diagnosed with bipolar disorder during service or that his bipolar disorder was etiologically related to his military service. That decision is final. 

In an August 2000 rating decision, the RO denied the Veteran's claim for service connection for bipolar disorder. That decision is final. 

In a March 2010 rating decision, the RO denied the Veteran's petition to reopen a claim for service connection for bipolar disorder. That decision is final.

In a June 2010 rating decision, the RO denied the Veteran's petition to reopen a claim for service connection for bipolar disorder. In June 2010, the Veteran was advised of the rating decision and his appellate rights. The Veteran did not file a NOD. In addition, no new and material evidence pertaining to the Veteran's claim was received within one year of the June 2010 rating decision. Therefore, the June 2010 rating decision is final. 

In the June 2010 rating decision, the RO denied the Veteran's petition to reopen a claim for service connection for bipolar disorder, because no new and material evidence had been submitted, which showed that the Veteran's bipolar disorder was related to his military service. 

Since the Veteran's last prior final denial in June 2010, the record includes an October 2017 VA clinical psychologist opinion that his bipolar disorder was related to his military service. The Board finds that this evidence is new as it was not previously of record and tends to relate to a previously unestablished fact necessary to substantiate the underlying claim of service connection. The October 2017 VA clinical psychologist opinion will be presumed credible for the purpose of reopening the claim. Consequently, the claim of entitlement to service connection for bipolar disorder is reopened. 

Service Connection

As an initial matter, the Board recognizes that the Veteran has recently been diagnosed with PTSD. Furthermore, the Veteran filed a separate claim for service connection for PTSD, which was denied in a December 2017 rating decision. That decision has not been appealed. Accordingly, the relevant facts and analysis discussed below will be limited solely to the service connection claim for bipolar disorder.

The Veteran contends that his currently diagnosed bipolar disorder is related to the anti-Semitic treatment he received from his superior and other servicemen during his active duty service. He recalled getting into both physical and verbal altercations concerning religious harassment. He explained that his superior harassed him and constantly assigned him to unsafe circumstances. He said that during one incident, he was dragged out of his bed in the middle of the night to engage in a boxing fight, he gained an advantage over the other serviceman, and he ended up flipping the serviceman overboard. After the fight, he overslept making him late for his watch assignment a few hours later. He was then reassigned to Engineering, after which he no longer had any other anti-Semitic incidents. 

Service connection may be granted for a disability resulting from disease or injury incurred in or aggravated by service. 38 U.S.C. § 1110; 38 C.F.R. § 3.303(a). Generally, service connection requires: (1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service. See Shedden v. Principi, 381 F.3d 1163, 1166-67 (Fed. Cir. 2004); see also Caluza v. Brown, 7 Vet. App. 498 (1995). Service connection may also be granted for any disease diagnosed after discharge when the evidence establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d).

Service treatment records do not document any findings related to any complaints, treatment or diagnosis for any psychiatric problems. At his September 1971 separation examination, the Veteran had normal psychiatric clinical evaluation results. 

VA treatment records from December 1998 to October 2017 document the Veteran's treatment for mental health problems. On the advice of his employer, the Veteran first sought treatment in December 1998 for complaints of intermittent, violent shaking and frequent outbursts at work. Following an objective evaluation, the VA treating physician found that the Veteran had a bizarre affect with somewhat pressured speech. He was formally diagnosed with bipolar disorder in 1999 and placed on Lithium. See July 1999 and December 1999 VA Progress Notes. Subsequent treatment records through 2017 continued to reflect the Veteran's treatment for bipolar disorder with medication. 

An August 2017 VA Psychology Note summarized the Veteran's reported in-service experiences involving his perceived religious harassment. The VA treating psychologist noted that the Veteran would think about those experiences at least once a week, displayed clear exposure distress, and had feelings of anger, fear, glee or triumph, and guilt over the incident with the serviceman that he threw overboard and led to his reassignment. According to the VA treating psychologist, other symptomatology shown by the Veteran, including decreased interests, feelings of estrangement of others, and difficulty in feeling positive emotions, made an assessment as to whether the Veteran's mental health disorder was linked to his military trauma indeterminable. 

In October 2017, the Veteran presented a letter from his VA clinical psychologist, who indicated that he had been treating the Veteran since June 2017 for his primary diagnosis of bipolar disorder. The Veteran told the VA treating psychologist that he had been diagnosed with bipolar disorder during service in 1969. Noting his lack of access to the Veteran's service treatment records, the VA treating psychologist opined that "if the Veteran was first diagnosed with and treated for bipolar disorder during his military service, then by definition it is at least as likely as not that his bipolar disorder is the result of that service." 

In December 2017, the Veteran underwent a VA psychiatric examination. The Veteran described his in-service incidents of anti-Semitic harassment and his subsequent response to that mistreatment. Upon an objective evaluation, the Veteran's bipolar disorder diagnosis was confirmed. The VA examiner found that there was a lack of evidence of mental health treatment during service or any documented reports of military trauma or symptoms related to service within his extensive VA treatment records until recently. Based on those findings, the VA examiner opined that it was less likely as not that the Veteran's bipolar disorder was related to his active duty service. 

Based on a careful review of the subjective and clinical evidence, the preponderance of the evidence weighs against finding service connection for bipolar disorder is warranted. 

There is no dispute in the record that the Veteran has a current diagnosis for bipolar disorder. 

The Board finds that the Veteran's lay assertions that he experienced incidents of religious harassment during his active duty service are both competent and credible, as there is no evidence to the contrary. See Layno v. Brown, 6 Vet. App. 465, 470 (1994). 

Now, with regard to the etiology of the Veteran's currently diagnosed bipolar disorder, the Board recognizes that there are conflicting medical opinions. As with all types of evidence, it is the Board's responsibility to weigh the conflicting medical evidence to reach a conclusion as to the ultimate grant of service connection. Wood v. Derwinski, 1 Vet. App. 190, 193 (1991). The Board may favor the opinion of one competent medical expert over another if its statement of reasons and bases is adequate to support that decision. Owens v. Brown, 7 Vet. App. 429, 433 (1995). Stated another way, the Board decides, in the first instance, which of the competing medical opinions or examination reports is more probative of the medical question at issue. Nieves-Rodriguez v. Peake, 22 Vet. App. 295, 300 (2008).

On that basis, the Board finds that the October 2017 VA clinical psychologist's opinion is not persuasive, because it was based on an inaccurate factual premise. The VA clinical psychologist noted the Veteran's report that he had been diagnosed with bipolar disorder in 1969 during his active duty service. There is no evidence in the record to support that statement. Notably, the record shows that the Veteran testified at his October 2017 Board hearing that he was not diagnosed with bipolar disorder until approximately 2000. Therefore, as the VA clinical psychologist based his opinion solely on the Veteran's inaccurate report, that opinion has little probative value.

Nevertheless, the record also includes a December 2017 VA opinion, which found that the Veteran's bipolar disorder was less likely than not related to his active duty service. That opinion was based on a review of the Veteran's entire medical history, consideration of his lay statements, and an objective evaluation, and was supported by a fully articulated rationale. Stefl v. Nicholson, 21 Vet. App. 120, 124 (2007). The Veteran has not presented any other medical evidence to the contrary. Under these circumstances, the Board finds that the December 2017 VA examiner's opinion is the most probative evidence addressing the etiology of the Veteran's bipolar disorder. 

While the Board recognizes the Veteran's lay assertions that his currently diagnosed bipolar disorder was caused by his active duty service, the Board finds that he has not demonstrated that he has the requisite specialized training to provide such a medically complex etiological opinion. See Davidson v. Shinseki, 581 F.3d 1313, 1316 (Fed. Cir. 2009). Therefore, the Board finds that the Veteran is not competent to link his current psychiatric disorder to his active duty service. So, the Veteran's assertions as to the etiology of his current bipolar disorder offer little probative value. 

In summary, the preponderance of the evidence weighs against finding in favor of the Veteran's service connection claim for bipolar disorder. Accordingly, the benefit-of-the-doubt rule does not apply, and the service connection claim must be denied. See 38 U.S.C. § 5107(b); 38 C.F.R. § 3.102; Gilbert v. Derwinski, 1 Vet. App. 49 (1990).


ORDER

New and material evidence has been received, and the claim of entitlement to service connection for bipolar disorder is reopened. 

Entitlement to service connection for bipolar disorder is denied. 

REMAND

Unfortunately, a remand is required in this case for the issues remaining on appeal. Although the Board sincerely regrets the additional delay, it is necessary to ensure that there is a complete record upon which to decide the claims so that the Veteran is afforded every possible consideration.

The Veteran's last VA examination for his service-connected excision of ganglion cyst of the left wrist was in October 2013. At his October 2017 Board hearing, the Veteran testified that that he had worsening symptoms of pain, limitation of range motion and arthritic changes. VA is required to afford the Veteran a contemporaneous VA examination to assess the current nature, extent, and severity of his service-connected disability. See Palczewski v. Nicholson, 21 Vet. App. 174, 181 (2007); Snuffer v. Gober, 10 Vet. App. 400, 403 (1997); see also 38 C.F.R. § 3.326(a) (2017). As the evidence suggests that the Veteran's excision of ganglion cyst of the left wrist may have worsened since his last VA examination, a remand is required to determine the current severity of his service-connected disability.

Moreover, the Board finds that, as the issue of whether the Veteran is entitled to a TDIU may be affected by the outcome of his higher evaluation claim for excision of ganglion cyst of the left wrist, the issues are inextricably intertwined. The Veteran's TDIU claim cannot be decided until the higher evaluation claim has been considered. See Harris v. Derwinski, 1 Vet. App. 180, 183 (1991).

Accordingly, the case is REMANDED for the following actions:

1. Obtain all of the Veteran's outstanding treatment records for his excision of ganglion cyst of the left wrist that are not currently of record. 

2. After completing the above, to the extent possible, schedule the Veteran for a VA examination to determine the current severity of his service-connected excision of ganglion of the left wrist by an appropriately qualified examiner. Provide the claims file, including a copy of this REMAND, to the examiner for review. 

The examiner should provide current findings regarding all symptoms associated with the Veteran's service-connected excision of ganglion cyst of the left wrist and should opine as to its severity.

The examiner should comment on the extent of any functional impairment caused by the Veteran's service-connected excision of ganglion cyst of the left wrist, to include in an occupational setting and in performing ordinary, daily activities. 

All findings should be fully documented in the examination report. 

3. After ensuring compliance with the above, readjudicate the higher evaluation claim for excision of ganglion cyst and the TDIU claim. If the benefits sought on appeal remain denied, in whole or in part, the Veteran and his representative should be provided a supplemental statement of the case. Then, return the case to the Board.

The Veteran has the right to submit additional evidence and argument on the matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court 

of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C. §§ 5109B, 7112 (2012).




______________________________________________
LESLEY A. REIN
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs